NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11478


WILLIAM J. BOWER  vs.  MICHELLE A. BOURNAY-BOWER.



Norfolk.     May 8, 2014. - September 15, 2014.

Present:  Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.


Divorce and Separation, Parent coordinator.  Constitutional Law,
    Judicial review, Delegation of powers.  Due Process of Law,
    Right to hearing, Delay in rendering decision.



Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on March 25, 2009.

A complaint for contempt, filed on October 13, 2011, was
heard by Christina L. Harms, J., and entry of judgment was
ordered by Jennifer M.R. Ulwick, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Susan E. Stenger (Francine Gardikas with her) for Michelle
A. Bournay-Bower.
Lisa A. Ruggieri & Jocelyn A. Thomsen for William J. Bower.
Kirsten V. Mayer, Nicole P. Cate, Sara Perkins Jones, Susan
R. Elsen, & Julia E. Schlozman, for Massachusetts Law Reform
Institute & others, amici curiae, submitted a brief.


SPINA, J.  This case raises an issue of first impression in

the Commonwealth regarding the authority of a judge in a divorce

or custody proceeding in the Probate and Family Court to appoint, over the objection of one of the parties, a "parent coordinator"[1] to assist parents in resolving conflicts that arise in implementing the custody and visitation provisions set forth in a final judgment of divorce. Additionally, this case raises the issue whether a judge may grant binding decision-making authority to the parent coordinator, again without the consent of both parties, to resolve conflicts that arise between the parents regarding custody or visitation.[2] We transferred this case from the Appeals Court on our own motion, and we conclude that the judge in this case exceeded the bounds of inherent judicial authority in appointing, without all parties' approval, a parent coordinator with binding decision-making authority. We further conclude that the breadth of authority vested in the

---

[1] The Association of Family and Conciliation Courts, an international, interdisciplinary association of professionals that has published guidelines for parent coordinator practice, describes parent coordination as "a child-focused alternative dispute resolution process in which a mental health or legal professional with mediation training and experience assists high conflict parents to implement their parenting plan by facilitating the resolution of their disputes in a timely manner, educating parents about children's needs, and with prior approval of the parties [or] the court, making decisions within the scope of the court order or appointment contract." The AFCC Task Force on Parenting Coordination, Guidelines for Parenting Coordination, 44 Fam. Ct. Rev. 164, 165 (2006).

[2] We acknowledge the amicus brief submitted in this case by the Massachusetts Law Reform Institute, Community Legal Services and Counseling Center, Greater Boston Legal Services, Harvard Legal Aid Bureau, Justice Center of Southeast Massachusetts, MetroWest Legal Services, and The Second Step.

parent coordinator constitutes an unlawful delegation of judicial authority. Accordingly, we vacate the order.[3]

1. Background. a. Facts. The parties in this case, whom we shall call the mother and the father, are divorced parents of four minor children. The initial complaint for divorce was filed in March, 2009. After more than two years of litigation, a judgment of divorce nisi entered on May 11, 2011. The judgment provided for shared legal custody of the parties' four children and incorporated and merged the parties' separation agreement, which contained a detailed six-page parenting plan. The judgment further set forth provisions for visitation with the children during winter holidays and summer vacations as the parties were unable to reach an agreement regarding visitation during those time periods.

By the end of 2011, each of the parties had filed contempt complaints alleging that the other had violated various terms of the divorce judgment, including the obligation to adhere to the parenting time schedule and the obligation to share decision-making regarding major issues in the children's lives. The father's complaint requested that the mother be adjudged in

---

[3] We do recognize, however, the important role that parent coordinators may serve in assisting divorcing or divorced parents in resolving custody and visitation disputes outside of court. Consequently, as discussed at the end of this opinion, we refer this issue to the Probate and Family Court to consider the adoption of a rule governing the appointment of parent coordinators in appropriate proceedings.

contempt and that she be ordered to participate in parenting coordination and to be bound by the decisions of the parent coordinator.

At the hearing on the parties' complaints for contempt, the judge declined to hear argument on the allegations contained in the complaints for contempt and instead focused on the father's request that a parent coordinator be appointed in this case.[4] The mother objected to the appointment of a parent coordinator and indicated that she preferred for the judge, who was familiar with the case, to enforce the judgment and to resolve disputes arising from the parties' implementation of the parenting plan.

Despite the mother's objections at the hearing, the judge issued an order requiring the parties to utilize the services of the parent coordinator identified in the order.[5] In substance, the order required the parent coordinator to hear all of the

---

[4] At the hearing, the judge explained that she was focused on the issue of the appointment of a parent coordinator because she hoped to implement a process that could help to prevent the sorts of disputes that had given rise to the complaints for contempt in this case. As the judge stated at the hearing, "I have to decide first how to get you out of this cycle where you gather up a bunch of stuff, you come in like a volcano overflowing, and all the bad stuff has actually already happened, and I can't get a handle on how it happened. . . . I'm [going to] try to get . . . a system in effect . . . that maybe gets a little bit ahead of these problems and starts to give some relief."

[5] The order originally issued by the judge contained an incomplete sentence, which was corrected in a subsequent "clarified order." As the clarified order was issued later and binds the parties, we refer to the clarified order as "the order" at issue in this case.

parties' current and future disputes regarding custody and visitation in the first instance, before the parties could file any action regarding these disputes in court.  The order also granted the parent coordinator the authority to make binding decisions on matters of custody and visitation and provided that these decisions must be complied with by the parties as if they were court orders unless one of the parties were to go to the court before the decision was to take effect and obtain a contrary order.[6]

After the retirement of the judge who issued this order, another judge issued a decision on the parties' contempt complaints, and in so doing, ordered the parties to adhere to the order appointing the parent coordinator.  After the decision on the contempt complaints was entered as a judgment, the mother appealed the order appointing the parent coordinator, and we transferred this case on our own motion.

---

[6] The order provided in full:  "Effective immediately, a Parent Coordinator shall serve to hear all disputes between the parties regarding custody and visitation, in the first instance, before such matters are brought before the court.  The Parent Coordinator shall have BINDING AUTHORITY to issue rulings concerning disputes brought to her, and the parties must comply with her decisions as if they were court orders, UNLESS either party, dissatisfied, comes to court before the decision is to take effect, and obtains a contrary order.  The Parent Coordinator shall be paid for her services by the father.  However, nothing herein precludes the Parent Coordinator from making a different fee recommendation at any time, if she feels that the conduct of the mother so warrants."  (Emphases in original.)  The order further named a specific parent coordinator with whom the parties were to engage.

The mother now argues that the judge lacked both express and inherent authority to appoint a parent coordinator, that the order here constituted an unlawful delegation of judicial authority, and that where the mother did not consent to the use of a parent coordinator, the order infringed on her due process right of access to the courts.[7]  Although we recognize, as did the judge in this case, that parent coordinators may provide valuable assistance to parents in implementing custody and visitation plans, we conclude that the order at issue here exceeded the bounds of the judge's inherent authority and was so broad in scope that it constitutes an unlawful delegation of judicial authority.  Accordingly, we vacate the order appointing the parent coordinator and so much of the subsequent judgment as required the parties to comply with the order.

b.  <u>Role of a parent coordinator</u>.  Generally, parent coordinators, whose backgrounds may be in mental health, family law, or other relevant fields, are understood to serve as neutral third parties who assist separated or divorced parents in resolving conflicts that arise in the implementation of custody and visitation arrangements in a manner that reduces the impact of the parents' conflict on their children.  C.P. Kindregan, Jr., M. McBrien, & P.A. Kindregan, Family Law and

---

[7] In the Probate and Family Court, the mother also sought a stay of the order appointing the parent coordinator while this appeal was pending, which was granted.

Practice § 37:3 (4th ed. 2013). The specific nature of the role of a parent coordinator varies significantly both within and among jurisdictions that permit such appointments. See, e.g., Fla. Stat. § 61.125 (2009); N.D. Cent. Code § 14-09.2-01 (2009); Or. Rev. Stat. § 107.425 (2008). In certain circumstances, the role of parent coordinator may be analogous to that of a mediator, in others to that of a master, and still in others, the parent coordinator's role combines multiple functions. See, e.g., Minn. Stat. § 518.1751(1b)(c) (2001) (parent coordinator authorized to use "mediation-arbitration process" in which parent coordinator facilitates dispute resolution in first instance but is permitted to issue decision resolving dispute where parents cannot agree); Ariz. R. Fam. Law P. 74(E), (F) (2011) (parent coordinator is authorized to interview family and household members, health care providers, and school officials and to make recommendations to court regarding implementation or modification of custody and parenting time orders, or to recommend that parties or children participate in ancillary services such as counselling or substance abuse monitoring); Utah Jud. Admin. R. 4-509 (2009) (parent coordinator's role is "like that of the mediator," and authority is limited to making recommendations directly to parties and facilitating parents' creation or revision of parenting plan). In some jurisdictions, the parent coordinator's role is to provide a hybrid of a

mediation and arbitration services in which the parent coordinator seeks to facilitate dispute resolution between the parties in the first instance, but if the dispute is intractable, the parent coordinator is permitted to issue a binding decision resolving the conflict. See, e.g., Fla. Stat. § 61.125(1); Minn. Stat. § 518.1751 (1b)(c) (2001); N.C. Gen. Stat. § 50-92(b) (2005); Okla. Stat. Ann. tit. 43, § 120.2 (West 2003); Idaho R. Fam. Law P. 716(G)(1)(e) (2014). In other jurisdictions, a parent coordinator may provide alternative dispute resolution services and serve certain quasi judicial functions such as gathering facts or making recommendations to the court. See, e.g., La. Rev. Stat. Ann. § 9:358.4(C) (2007); Or. Rev. Stat. § 107.425(3)(a)(A), (C); S.D. Codified Laws § 25-4-70(5) (2013); Ariz. R. Fam. Law P. 74(E), (F).

Over the past several years, the use of parent coordinators to assist parents in developing and implementing custody and visitation arrangements has become increasingly common across the country as well as in Massachusetts. See Jordan v. Jordan, 14 A.3d 1136, 1153 (D.C. 2011) (referencing thirty jurisdictions in twenty-seven States that permit appointment of parent coordinators by statute or court rule). See also Katzman v. Healy, 77 Mass. App. Ct. 589, 594 n.6 (2010) (discerning no error in order requiring parents to implement provision of separation agreement calling for use of parent coordinator);

Tammaro v. O'Brien, 76 Mass. App. Ct. 254, 255 n.3 (2010) (referencing provisions in separation agreement merged into final judgment of divorce that required parents to use parent coordinator); R.S. v. M.P., 72 Mass. App. Ct. 798, 802 n.8 (2008) (referencing appointment of parent coordinator in case while complaint for modification was pending).  Indeed, judges in our courts have acknowledged the potential benefits provided by parent coordinators, particularly in more contentious cases. See, e.g., R.S., supra (describing probate court judge's rationale in appointing parent coordinator as providing parties with "convenient, expeditious and economical forum to help them to resolve decision making regarding their children").

Despite the increasing use of parent coordinators in Massachusetts, the specific functions of a parent coordinator, including the parent coordinator's duties, necessary qualifications, or scope of authority, have not been set forth by statute or court rule.  See, e.g., 2007 Senate Doc. No. 895, "An Act relative to the appointment of parenting coordinators in the probate courts" (never enacted by the Legislature). Massachusetts statutes and court rules recognize various types of alternative dispute resolution practices and define the roles of quasi judicial officers including guardians ad litem and masters who may investigate facts and make reports to the court. However, no statute or court rule specifically recognizes either

the role of a parent coordinator or the service of parent coordination.

For example, S.J.C. Rule 1:18, as amended, 442 Mass. 1301 (2004) (Uniform Rules on Dispute Resolution), sets forth a comprehensive scheme of rules governing court-connected alternative dispute resolution services. The rules address in detail the administrative structure for court-connected dispute resolution services, the implementation of court-connected dispute resolution, the respective duties of the courts and approved dispute resolution programs with respect to court-connected dispute resolution services, and the qualifications and ethical standards for providers. The rules recognize "[d]ispute resolution service[s]" that include, but are not limited to, "arbitration," "case evaluation," "conciliation," "mediation," "mini-trial," and "summary jury trial." Uniform Rule 2. Rule 2 also separately defines "[d]ispute intervention," which is a process used in the Probate and Family Court and in the Housing Court in which a neutral identifies the areas of dispute between the parties and assists in the resolution of differences.

Under the rules, parties may not be compelled to participate in dispute resolution services except that the Probate and Family Court may require parties to participate in dispute intervention. Uniform Rule 6 (d). However, any trial

court department may seek authorization from the Chief Justice of the Trial Court to implement a mandatory dispute resolution program in civil cases.  Uniform Rule 4 (c).  Such mandatory programs must meet certain minimum requirements, including that each party must be permitted to petition the court to terminate dispute resolution services for good cause shown; that the court shall give preference to a dispute resolution process upon which the parties agree; that the court must explicitly inform parties that they are not required to settle their case or resolve their dispute in the dispute resolution process; and that no fees may be charged to any party that is required to participate in dispute resolution.  Uniform Rule 4 (c) (i)-(iv).

Similarly, G. L. c. 215, § 56A, authorizes the appointment of a guardian ad litem in any proceeding pending in probate court.  The guardian ad litem is required to investigate facts involving the care, custody, and maintenance of minor children and to report the results of the investigation to the judge in writing before issuance of a final judgment or decree in the proceeding.  See Probate and Family Court Standing Orders 1-05, 1-08 (2008) (establishing comprehensive standards governing duties, methodologies, and qualifications of guardians ad litem who act as custody, visitation, or adoption investigators or evaluators).  Further, Mass. R. Civ. P. 53 (b) (1), as appearing in 423 Mass. 1408 (1996), permits a court in which a civil

action is pending to appoint a master, subject to the assent of the parties, to hear evidence and report facts to the judge. Rule 53 further sets forth rules governing a master's qualifications, compensation, powers, and responsibilities. See Mass. R. Civ. P. 53 (b) (1), (c), (e), (g), (h).

Although a parent coordinator may be qualified to provide many of the services contemplated by S.J.C. Rule 1:18, or G. L. c. 215, § 56A, or Mass. R. Civ. P. 53, the father does not argue that the authority to appoint the parent coordinator is implicit in an existing statute or court rule, nor did the judge appear to derive her authority to appoint the parent coordinator from an existing statute or court rule.[8] Consequently, despite

---

[8] Even if the father had argued that the appointment here was authorized by a statute or rule governing court-connected alternative dispute resolution or the appointment of masters or guardians ad litem, the terms of the appointment here did not conform to any of these rule schemes. For example, the appointment here was made over the objection of the mother, but there is no indication in the record that a pilot program for mandatory dispute resolution was in place at the time as required by S.J.C. Rule 1:18, as amended, 442 Mass. 1301 (2004) (Uniform Rules on Dispute Resolution). See Uniform Rule 4 (c) (requiring trial court departments to obtain approval from Chief Justice of the Trial Court prior to implementing programs requiring parties to participate in dispute resolution without their consent). Further, the services of the parent coordinator were not free, and the parent coordinator was authorized to issue decisions with the binding effect of court orders. Compare Uniform Rule 4 (c) (iii), (iv) (outcome of mandatory dispute resolution services may not be binding on parties, and services must be provided free of charge). Additionally, although the record here indicates that the judge selected the particular parent coordinator because of her knowledge of the parent coordinator's exceptional qualifications, there is no indication in the record that the judge selected the parent

existing rules governing alternative dispute resolution and the appointment of quasi judicial officers, either of which may have provided a basis for the judge's authority to appoint a parent coordinator if the parent coordinator's role had been limited in scope and analogous to the services contemplated by these rules, we must consider the parties' arguments regarding inherent judicial authority as the source of the judge's authority to issue the order in this case.

2.  Judge's inherent authority to appoint a parent coordinator.  The mother argues that without express authorization by statute or court rule, and without agreement of the parties, the judge was without authority to appoint a parent coordinator in this case.  The father argues that the use of parent coordinators in Massachusetts has become increasingly common, and that in the absence of a statutory prohibition, it

---

coordinator from a list maintained by the Probate and Family Court as contemplated by Uniform Rule 4 (a), requiring maintenance of an appointment docket for fee-generating appointments in all courts.  Further, the parent coordinator in this case was not ordered to act in a role akin to that of a quasi judicial officer investigating or finding facts or reporting them to the court.  Rather, the parent coordinator was authorized to issue binding decisions on the merits of the parties' present and future disputes regarding custody or visitation, a role that exceeds the scope of authority of either a master or a guardian ad litem.  See Mass. R. Civ. P. 53 (a) (i) (masters hear evidence in any action and report facts to court); Probate and Family Court Standing Orders 1-05, 1-08 (2008) (guardian ad litem investigators gather and report factual data to court and guardian ad litem evaluators gather and report data and offer clinical opinions when competent to do so).

was a permissible exercise of the judge's discretion to appoint a parent coordinator.  See Matter of Moe, 385 Mass. 555, 561 (1982) (recognizing broad, equitable power of probate court to act in best interests of persons in its jurisdiction).  We conclude that judges in the Probate and Family Court possess the inherent authority to appoint parent coordinators in appropriate circumstances but that the appointment in this case exceeded the bounds of that authority.

We have long recognized that courts in this Commonwealth possess certain inherent powers whose exercise is "essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases."  Sheriff of Middlesex County v. Commissioner of Correction, 383 Mass. 631, 636 (1981), citing Opinion of the Justices, 279 Mass. 607, 613 (1932).  See Blankenburg v. Commonwealth, 260 Mass. 369, 372-373 (1927).  These powers are necessary to "secure the full and effective administration of justice" and thus extend beyond adjudication to ancillary functions such as rule-making and judicial administration.  O'Coin's, Inc. v. Treasurer of the County of Worcester, 362 Mass. 507, 510, 514 (1972).

Moreover, by statute, divisions of the Probate and Family Court Department are courts of "superior and general jurisdiction with reference to all cases and matters within which they have jurisdiction."  G. L. c. 215, § 2.

Specifically, the Legislature has granted probate courts jurisdiction over, among other areas, the appointment of guardians and conservators, along with exclusive original jurisdiction over actions for divorce and actions related to the care, custody, education, and maintenance of minor children. G. L. c. 215, §§ 2, 3, 4. This jurisdiction extends to equitable powers. G. L. c. 215, § 6. Thus, we have recognized that a probate court possesses broad and flexible inherent powers essential to the court's duty to act in the best interests of persons under its jurisdiction. See Matter of Moe, 385 Mass. at 563. For example, we have recognized the inherent authority of a probate court to appoint a guardian ad litem in order to protect the interests of a person in a proceeding before it or to ensure the proper functioning of the court. See Superintendent of Belchertown State Sch. v. Saikewicz, 373 Mass. 728, 755 (1977), citing Lynde v. Vose, 326 Mass. 621 (1951), and Buckingham v. Alden, 315 Mass. 383 (1944). Further, we have recognized the inherent authority of a probate court to rule on a petition by a guardian seeking court authorization to permit an extraordinary medical procedure to be undertaken on behalf of a ward. See Matter of Moe, supra at 556, 562.

Indeed, referral of appropriate cases to parent coordination or other alternative dispute resolution services may help to expedite the disposition of those cases and provide

a more satisfying and timely resolution of certain custody- and visitation-related disputes for the parties.  One recognized feature of parent coordination services is that parent coordinators can help to resolve disputes about "day-to-day" custody and visitation issues.  See Sullivan, Parenting Coordination:  Coming of Age?, 51 Fam. Ct. Rev. 56, 56 (2013).  See also The AFCC Task Force on Parenting Coordination, Guidelines for Parenting Coordination, 44 Fam. Ct. Rev. 164, 172 (2006).  Such disputes could arise from determining how to adjust visitation if school is unexpectedly canceled, which family members will attend a special event such as an award ceremony or athletic competition, whether both parents may attend a parent-teacher conference, or how accommodations will be made if a parent or child becomes ill.  In light of the number of cases filed daily in the Probate and Family Court, a parent coordinator may be available to assist the parties in resolving such a dispute sooner than a hearing before a probate court judge becomes available -- and perhaps before the dispute at issue gives rise to a complaint for contempt or other formal proceeding.

Therefore, probate court judges possess the inherent authority to refer parties to a parent coordinator in appropriate circumstances in order to conserve limited judicial resources and aid in the probate court's functioning and

capacity to decide cases, or if in the judge's discretion such referral is necessary to ensure the best interests of the children in a divorce- or custody-related proceeding.  See State Realty Co. of Boston v. MacNeil Bros., 358 Mass. 374, 379 (1970), quoting Link v. Wabash R.R., 370 U.S. 626, 630-631 (1962) (courts possess inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); Bahceli v. Bahceli, 10 Mass. App. Ct. 446, 449 (1980) (in custody proceeding, "[t]he overriding concern of the court must be the best interest of the child").  However, this authority is not without limit.

The inherent powers of the courts of the Commonwealth, including the Probate and Family Court, operate within certain boundaries.  For example, we held that a Juvenile Court judge does not possess the inherent authority to order parents to open their home to investigators from the Department of Social Services seeking a nonemergency home visit following an anonymous report of child abuse because the power to issue such an order was not in aid of the court's ability to function as a court.  See Parents of Two Minors v. Bristol Div. of the Juvenile Court Dep't, 397 Mass. 846, 851-853 & n.3 (1986) (contrasting G. L. c. 119, § 22 [1984], which authorized Juvenile Court judges to issue warrants permitting agents of Department of Social Services to enter foster homes to

investigate treatment and condition of children therein).

Further, we have held that a probate court does not possess the inherent authority to levy an obligor's property in order to recover child support arrearages where the authority to collect such arrearages was delegated by statute to the Department of Revenue and the recovery of unpaid support by the probate court, as compared to the authority to order prospective support payments, was not essential to the court's functioning, authority, or capacity to decide cases.  See Gray v. Commissioner of Revenue, 422 Mass. 666, 672-673 (1996) (interpreting G. L. c. 209C, § 9 [a], and G. L. c. 119A, § 6 [a], [b] [1]).

Moreover, we have stated that inherent judicial powers arise from the individual right to the "impartial interpretation of laws, and administration of justice" guaranteed by art. 29 of the Massachusetts Declaration of Rights along with the right to seek recourse under the laws and to obtain justice freely, completely, promptly, and conformably to the laws, as provided by art. 11.[9]  See First Justice of the Bristol Div. of the Juvenile Court Dep't v. Clerk-Magistrate of the Bristol Div. of

---

[9] Article 11 of the Massachusetts Declaration of Rights states in full:  "Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character.  He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

the Juvenile Court Dep't, 438 Mass. 387, 396-397 (2003) ("It is from these lofty principles that flows the concept of inherent judicial powers . . ."). Therefore, we have held that judges must exercise their inherent powers to secure the full and effective administration of justice. Querubin v. Commonwealth, 440 Mass. 108, 114-115 (2003). O'Coin's, Inc., 362 Mass. at 514.

What follows, then, is that inherent judicial powers should not be exercised in a manner that undermines the very constitutional rights from which those powers arise. Here, the nature of the authority granted to the parent coordinator in the order of appointment, combined with the procedural requirements in the order, including the limits on the parents' right to file an action in court, and the limits on judicial review of the parent coordinator's decisions, raise significant due process concerns, implicating, among other rights, those guaranteed by art. 11 of the Massachusetts Declaration of Rights. Therefore, these due process concerns assist us in identifying the outer limits of a judge's inherent authority to refer parties to a parent coordinator.

a. Binding authority of parent coordinator. A judge's inherent authority does not extend to compelling a party to submit to the binding decision-making authority of a parent coordinator without that party's consent. Among other

protections, art. 11 of the Massachusetts Declaration of Rights safeguards an individual's right to seek recourse under the law for all injuries or wrongs to persons, property, or character. The order here infringed upon this right because it required the mother, without her consent, to submit all disputes to a parent coordinator, rather than to a judge, for binding resolution. This sort of binding decision-making authority is a power commonly held by an arbitrator. See, e.g., Uniform Rule 2 ("'Arbitration' means a process in which a neutral renders a binding or non-binding decision after hearing arguments and reviewing evidence"). We held in Gustin v. Gustin, 420 Mass. 854, 857-858 (1995), that a judge may not compel parties to submit to binding arbitration without their consent. Further, although our rules governing the implementation of court-connected dispute resolution services contemplate pilot programs for mandatory participation in alternative dispute resolution, such programs may extend only to nonbinding dispute resolution services. See Uniform Rule 4 (c). A court in at least one other State has held that granting a parent coordinator binding decision-making authority without the consent of the parties violates the parents' due process rights.[10] See Kilpatrick v. Kilpatrick, 198 P.3d 406, 410 (Okla. Civ. App. 2008).

---

[10] We also observe that the order does not set forth, nor does the record indicate, whether any provision was made for representation by counsel in appearances before a parent

b.  <u>Deferral of decision on pending contempt complaint</u>.

Moreover, the order infringed on the mother's right to have the merits of her pending contempt complaint screened by a judge early in the proceedings before referral to a parent coordinator.  Indeed, the judge issued the order in this case during the parties' hearing on their cross complaints for contempt without hearing the parties on the merits of their claims or issuing a ruling on those complaints.  The order appointing the parent coordinator therefore served to defer the judge's decision on the mother's claims regarding disputed actions that had already taken place that may have constituted a violation of the final divorce judgment.  To defer this decision over the mother's objection effectively infringed upon her right to seek recourse under the law for the father's alleged failure to adhere to the terms of the judgment.[11]

---

coordinator or whether any other standards were imposed by the court governing the procedures a parent coordinator must follow prior to issuing a binding decision which could affect the parents' fundamental rights in the custody and visitation context.  Consequently, the absence of both parents' consent to the appointment raises significant procedural due process concerns as well.

[11] A judge's inherent authority likely extends to a recommendation to the parties to use the services of a parent coordinator prior to a scheduled contempt hearing, perhaps with the hope that the parties will resolve the conflict that gave rise to the contempt complaint and withdraw the complaint or present a resolution to the judge at the hearing.  However, deferring a party's right to be heard on a contempt complaint during the contempt hearing approaches an infringement of the parties' right to seek recourse under the law.  Similarly, if

c.  Prior restraint on future litigation.  Additionally, the order here functionally placed a prior restraint on the parents' ability to file any future claim related to custody or visitation in court.  Indeed, the order expressly required the parties to submit all disputes regarding custody or visitation to the parent coordinator "before such matters are brought before the court."  This provision is unlike programs which may permit referral of a case to mediation or other alternative dispute resolution once the claims are reviewed by a judge and determined to be appropriate for such referral.  G. L. c. 211B, § 19 (authorizing mandatory, nonbinding dispute resolution pilot program which requires screening and referral after action filed).  The order here denies the parents the right even to obtain access to the court regarding future disputes or other issues without first engaging with the parent coordinator.  This prior restraint on the ability to file future claims without both parents' consent may also infringe upon the parties' right to seek "recourse to the laws."[12]  Art. 11.  In an analogous

---

the parties were before a judge in another type of proceeding in which immediate judicial action were necessary, for example, to enjoin an ongoing violation of a divorce judgment or temporary visitation plan, a judge should not defer the decision and refer the parties to a parent coordinator.

[12] Further, although the father in this case consented to pay for the services of the parent coordinator, requiring parties to use the services of a parent coordinator prior to filing any future actions related to custody and visitation could amount to conditioning the right of access to the courts

context, one State court held that a judge's bar on future postjudgment filings by parties to a divorce proceeding, absent demonstrated, good-faith participation in a "four-way settlement conference," constituted an impermissible burden on the parties' due process right of access to the courts.[13]  Parish v. Parish, 988 A.2d 1180, 1182, 1190 (N.J. Super. Ct. App. Div. 2010).

---

on the use of a costly service.  Although the record before us does not reflect the fees charged by the parent coordinator appointed in this case, the amici state that parent coordinators may charge several hundred dollars per hour.  See, e.g., Segal v. Lynch, 211 N.J. 230, 236 (2012) (parent coordinator's proposed retainer agreement provided for initial joint retainer of $5,000 against which fee of $325 per hour would be billed); Raviv v. Raviv, 64 A.D.3d 638, 638 (N.Y. 2009) (parent coordinator fee called for $2,500 retainer and $250 per hour after retainer).  Parent coordinator fees in Massachusetts are not regulated by statute or court rule.  Such a precondition on filing a claim implicates the right to access justice "without being obliged to purchase it" under art. 11, and the precondition offends Federal due process values where it could operate to foreclose a party's opportunity to access the court as a result of the party's inability to pay.  See Boddie v. Connecticut, 401 U.S. 371, 380-382 (1971).

[13] We also observe that a prior restraint on litigation is especially concerning in cases that may involve domestic violence.  Although not at issue in this case, requiring a party who is or has been a victim of domestic violence at the hands of the other party to submit to binding alternative dispute resolution with a parent coordinator as a prerequisite to filing a claim in court could result in requiring a party effectively to choose between safety and access to the courts.  See 2007 Senate Doc. No. 895 (proposed parent coordinator legislation, if enacted, would have permitted court to terminate parent coordinator's appointment upon showing of past or present domestic violence that put victimized parent or child at risk of physical or emotional harm).  In related contexts, the Probate and Family Court has recognized that cases involving domestic violence should be exempt from certain procedures requiring the parties to meet outside of court.  See, e.g., Probate and Family Court Standing Order 1-06(4)(a) (2006) (in cases where domestic

d.  Impediments to judicial review.  Finally, the form of judicial review of the parent coordinator's decisions in the order at issue in this case is insufficient to cure the limitations on access to the courts created by compelling a parent to submit to binding dispute resolution.  Particularly in a case where one parent did not consent to this arrangement, it is not clear that merely providing for review of a parent coordinator's binding decision upon motion by a party is adequate to safeguard the parties' constitutional right of access to the court.  Indeed, even where both parties consent to participate in arbitration, the arbitrator's award is generally made binding by court order.  See Glenn Acres, Inc. v. Cliffwood Corp., 353 Mass. 150, 156 (1967) (statutory scheme governing commercial arbitration contemplates that finality of arbitrator's award is "subject to and dependent upon the entry of a judgment or decree by the court").

Further, by the express terms of the order, judicial review of a parent coordinator's binding decision may be entirely unavailable in many circumstances.  Specifically, the order provides in relevant part that decisions of the parent coordinator are binding as if court orders "unless either party,

---

violence restraining order has been issued, parties not expected to confer out of court for purposes of agreeing on proposed schedule for trial); Probate and Family Court Standing Order 1-10(B) (2010) (in cases where domestic violence restraining order has been issued, parties exempted from "introductory meeting" requirement).

if dissatisfied, comes to court <u>before</u> the decision is to take effect, and obtains a contrary order." Thus, the temporal restrictions on the face of the order make clear that meaningful judicial review may be unavailable for any decision of the parent coordinator that will take effect before the party can obtain review by a judge. Indeed, parent coordination services may be particularly beneficial to families in which disputes arise that require resolution sooner than a court may be available to hear a claim. See Sullivan, Parenting Coordination: Coming of Age?, 51 Fam. Ct. Rev. 56, 56 (2013). See also The AFCC Task Force on Parenting Coordination, Guidelines for Parenting Coordination, 44 Fam. Ct. Rev. 164, 172 (2006). Although expediency may be a beneficial feature of parent coordination services, the nature of these disputes also diminishes the practical availability of judicial review of a parent coordinator's decisions. Indeed, conflicts over day-to-day issues could arise and be decided by a parent coordinator within days of the event but without sufficient time to appeal the decision to the court before the appeal of the parent coordinator's decision is effectively moot. Even disputes that arise within a few weeks or months of the event in issue must first be decided by the parent coordinator, which could leave little time between the issuance of the parent coordinator's decision and the disputed event. Thus, by the plain wording of

this order, judicial review of some, if not many, of the parent coordinator's decisions could be completely unavailable.

Consequently, a judge in the Probate and Family Court possesses the inherent authority to refer parties to a parent coordinator. However, the appointment in this case exceeded the bounds of that authority by granting the parent coordinator binding decision-making authority without the consent of a party, deferring the decision on the parties' pending contempt complaints during the hearing on those complaints, placing a prior restraint on future claims also without the parties' consent, and potentially impeding judicial review of the parent coordinator's binding decisions.

If the parties had consented to the appointment, or if the parent coordinator's authority had been limited to assisting the parties in resolving their disputes by issuing recommendations to the parties, the referral to the parent coordinator may have been permissible as a way to further the court's capacity to decide cases by encouraging resolution of the parties' disputes by the parties themselves. Similarly, if the referral had not been made in lieu of a hearing and ruling on the parties' contempt complaints, but had been ordered while the parties were waiting for a scheduled hearing on the contempt, or as a way to expedite the negotiation of a settlement agreement or visitation plan while a divorce proceeding or complaint for modification

were pending, such an order may have been justified by the court's inherent authority.  However, in this case, the order, both in the nature of the authority granted to the parent coordinator and at the point in the proceedings in which it was issued, undermined the parties' right of access to the courts and therefore exceeded the scope of the judge's authority.  Moreover, even if the order had arisen from a valid exercise of the judge's inherent authority, the scope of authority granted to the parent coordinator in this case constituted an unlawful delegation of judicial decision-making authority and must be vacated on that ground.

3.  <u>Judge's delegation of authority to the parent coordinator</u>.  The order appointing the parent coordinator in this case provided that the parent coordinator "shall serve to hear all disputes between the parties regarding custody and visitation."  The mother argues that the scope of this order is so broad that it constitutes an unlawful delegation of judicial authority because nothing in this order prevents the parent coordinator from making structural changes to the custody arrangement without regard to the statutory standards which govern modification of final divorce judgments and because the judge abdicated her statutory authority to decide whether modifications to the custody arrangement are warranted.  We agree.

By statute, if a party seeks a modification of a final judgment of divorce, a judge may make a judgment modifying his or her earlier judgment provided the judge finds that "a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children."  G. L. c. 208, § 28.  No such standard governs the parent coordinator in the order at issue in this case.  Indeed, if a dispute were to arise between the parents regarding the fundamental terms of the custody arrangement set forth in the final judgment of divorce, nothing in this order would prevent the parent coordinator from issuing a binding decision altering those fundamental terms without considering either a material change in the circumstances or the best interests of the children.[14]  Thus, the order is unlawful because it empowers the parent coordinator to make alterations to the parties' custody and visitation arrangements without regard to statutory criteria governing such changes.  See G. L. c. 208, § 28.

---

[14] The father argues that the order does not exceed the scope of the judge's authority because neither the judge nor the father intended for the parent coordinator to be permitted to make significant, structural changes to the parties' custody and visitation plan.  However, the plain language of the order conveys no such limitation.  For example, if a dispute were to arise between the parents regarding winter visitation, such a dispute would appear to fall within the ambit of the authority granted to the parent coordinator to resolve, yet it could also involve a fundamental change to the parenting schedule set forth in the final judgment of divorce.

Moreover, even if the order had required the parent coordinator to apply the same statutory standard that governs a judge in ruling on a complaint for modification, the statute authorizes, and indeed obligates, the judge to issue the final decision on any modification to the family's custody arrangement. See Gustin, 420 Mass. at 857-858 (statute granting probate judge discretion to make fair and equitable division of property upon divorce grants judge "authority" and "obligation" to make determination); Heistand v. Heistand, 384 Mass. 20, 26 (1981) (in complaint for modification of divorce judgment, determination of "extent and palpability" of changed circumstances lies in discretion of trial judge). In similar cases we have held that a judge cannot shift the final decision-making authority granted by statute to a third party. See Silverman v. Spiro, 438 Mass. 725, 736-737 (2003) (judge could not grant therapist "sole authority" to determine when parent-child visitation would be appropriate where statute obligated judge to make specific findings on issue of visitation); Worcester County Trust Co. v. Marble, 316 Mass. 294, 301 (1944) (judge could not delegate to trustee authority to determine what constitutes "reasonable" legal fees where statute requires judge to make that determination). See also P.W. v. M.S., 67 Mass. App. Ct. 779, 785-786 (2006) (judge cannot delegate wholesale to guardian ad litem statutory duty to conduct in camera review of

documents over which privilege asserted).  Consequently, the scope of the authority granted to the parent coordinator in this case renders the order an unlawful delegation of judicial authority, and it must be vacated.

4.  <u>Referral to the Probate and Family Court</u>.  Although the order appointing the parent coordinator in this case must be vacated because it exceeds the bounds of the judge's inherent authority and constitutes, by its terms, an unlawful delegation of judicial decision-making authority, we recognize the valuable role that parent coordinators may play in assisting families involved in the Probate and Family Court system.  Consequently, we refer this matter to the Probate and Family Court to review and consider the promulgation of a rule governing the appointment of parent coordinators.

A rule will help to ensure that procedural and substantive safeguards are in place in any appointment of a parent coordinator to address issues including the selection of a parent coordinator, the points in proceedings when parties may be referred to a parent coordinator, the nature and scope of the authority that may be granted to a parent coordinator, and issues related to the apportionment and payment of the parent coordinator's fees.  For example, a list of approved providers should be maintained and appointments distributed fairly therefrom in order to address the concerns regarding favoritism

in fee-generating appointments set forth in S.J.C. Rule 1:07, as amended, 431 Mass. 1301 (2000). Further, a judge may not require the parties to use the services of the parent coordinator if the order would require one or both parents to pay for the services without his or her consent. Additionally, even in a case where the parties consent to pay, various divisions of a parent coordinator's fee may be appropriate depending on the financial circumstances of each parent or the posture of the case. However, care should be taken to ensure that the apportionment of fees does not give rise to the appearance of bias by the parent coordinator or give rise to problematic incentives of the parties.

Additionally, a rule could assist in delineating the scope of authority that may be delegated to a parent coordinator without constituting an unlawful delegation of judicial authority. For example, we have held that in some circumstances the delegation of certain judicial tasks to quasi judicial officers or third-party neutrals is permissible. See Gustin, 420 Mass. at 857-858 (judge could, in his discretion, require parties to submit dispute over property division to court-appointed intermediary to find facts and make recommendations provided that intermediary was not authorized to make binding decisions without consent of parties); Jones v. Jones, 349 Mass. 259, 264 (1965) (judge may delegate fact-finding functions to

guardian ad litem and consider recommendations contained in reports, provided judge retains ultimate responsibility to make custody decision).  Additionally, many jurisdictions that authorize the appointment of parent coordinators by statute or court rule expressly restrict the range of the parent coordinator's decision-making authority.  See, e.g., Fla. Stat. § 61.125(1) (2009) (with prior approval of parents and court, parenting coordinator may be authorized to make limited decisions within scope of court's order of referral); La. Rev. Stat. Ann. § 9:358.4(C) (2007) (parenting coordinator may not issue decisions but may submit recommendations in report to judge for final determination of disputes); N.C. Gen. Stat. § 50-92(b) (2005) ("court may authorize a parenting coordinator to decide issues regarding the implementation of the parenting plan that are not specifically governed by court order"); Okla. Stat. Ann. tit. 43, § 120.3 (West 2003) ("The appointment of a parenting coordinator shall not divest the court of its exclusive jurisdiction to determine fundamental issues of custody, visitation, and support, and the authority to exercise management and control of the case"); S.D. Codified Laws § 25-4-70 (2013) ("A parenting coordinator shall not have the authority to make any decision affecting child support, a change of custody, or a substantial change in parenting time"); Tex. Fam.

Code Ann. § 153.606(c) (West 2009) ("The parenting coordinator may not modify any order, judgment, or decree").

Further, the Probate and Family Court may wish to consider other issues such as the training, licensing, or monitoring of parent coordinators, whether and how parents may file complaints or seek removal of parent coordinators, confidentiality policies, impartiality, and case screening procedures. In so doing, the Probate and Family Court may wish to draw on S.J.C. Rule 1:18 in crafting a rule governing parent coordinators as S.J.C. Rule 1:18 reflects many important limitations on the authority of individuals who play a role in assisting litigating parties in resolving their disputes out of court. The court may also wish to consider whether to propose an amendment to S.J.C. Rule 1:18 recognizing parent coordination as a form of dispute resolution services that may be covered by the rule. Ultimately, the Probate and Family Court should be guided by the boundaries on a judge's inherent authority referenced in this opinion.

We further acknowledge that parent coordination services are being used with increasing frequency in Massachusetts and that such services may provide an important benefit to families and to the court system. Therefore, nothing in this decision should be construed to limit the ability of parties to agree to use the services of a parent coordinator or for a judge to

incorporate that agreement into a judgment of divorce or to otherwise enforce the agreement using contract principles.

5. <u>Conclusion</u>. The terms of the appointment of the parent coordinator in this case exceed the bounds of the judge's inherent authority, and the breadth of the order constitutes an impermissible delegation of judicial decision-making authority. Accordingly, we vacate the original order of appointment, the clarified order, and the portion of the judgment issued requiring the parties to comply with the order.

<u>So ordered</u>.