NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-61                                          Appeals Court

NORBERTO A.Y. LEON  vs.  JESSICA S. CORMIER.

No. 16-P-61.

Suffolk.     November 17, 2016. - March 24, 2017.

Present:  Hanlon, Sullivan, & Blake, JJ.

Divorce and Separation, Parent coordinator.  Contempt.
    Evidence, Refusal to comply with court order.


    Complaint for divorce filed in the Suffolk Division of the
Probate and Family Court Department on September 7, 2011.

    Complaints for contempt, filed on January 2, 2015, were
heard by Abbe L. Ross, J., and motions for relief from judgment
were considered by her.


    Peter A. Kuperstein (Mary Donahue also present) for the
mother.
    Norberto A.Y. Leon, pro se.


    HANLON, J.  A judge of the Probate and Family Court held

the mother, Jessica Cormier, in civil contempt for violations of

a decision issued by an agreed-upon parent coordinator.  Cormier

appeals, arguing that the parent coordinator's decision was not

an order or judgment of the court and therefore cannot be

enforced by a finding of contempt.  After review, we conclude that, at least under the circumstances of this case, the parent coordinator's decision was, in fact, an order of the court pursuant to the judgment of divorce nisi; we therefore affirm.

Background.  On November 20, 2012, the parties executed a separation agreement which was incorporated in the corrected judgment of divorce nisi on December 7, 2012, as of November 20, 2012.  According to the judgment, the terms of the agreement were given the "full force and effect of an order of [the] [c]ourt."  The agreement provided, among other things, that "[t]he parties may modify the parenting plan by agreement" and, in so doing, agree to use the services of a mutually selected parent coordinator to assist them if they are "unable to agree on any matter related to the parenting plan[,] including educational changes."[1]  The parties also agreed in advance that the decisions of the parent coordinator "[would] be binding on the parties unless altered, modified or terminated by [c]ourt order."

Thereafter, following a series of disputes about several things, including the location where the children were to be picked up and dropped off during custody exchanges, the parties

---

[1] The parenting plan in the separation agreement had provided that, after the mother returned to work, the father would have the option of adding to his visitation schedule "up to [three] more weekdays (once per week) in every [four] week period."

agreed to use the services of the mutually selected parent coordinator. On December 21, 2013, the parent coordinator sent an electronic mail (e-mail) message to the parties, clarifying a previous decision and specifying, among other things, the details of future visitation exchanges and the timing of e-mail communications between the parties.[2,3] At no point did the mother indicate that she did not intend to be bound by the decision of the parent coordinator, nor did she ask the judge to modify or terminate the coordinator's order.

Over the next one and one-half years or so, the mother failed to follow the prescribed exchange procedures and frequently sent nonemergency e-mail messages to the father at times other than the "designated Tuesday email time." She also instructed the father, on several occasions, contrary to the order, to pick up the children in Pepperell, rather than in

---

[2] As to visitation exchanges, the parent coordinator stated that "the exchange at the front end of the visit shall occur at the Chelmsford Police Station and the back end shall occur at the Pepperell Police Station." With regard to e-mail communications, she stated, "[a]s a rule, emails between [the parties] should still occur during the designated Tuesday email time. The ONLY exceptions are in case of significant emergency or a necessary change in logistics that must be established for something that is to occur prior to the next Tuesday email time."

[3] During the February 27, 2015, hearing on the father's complaints for contempt, he referred to two e-mail messages received from the parent coordinator in November, 2013, that were later clarified by a December 21 e-mail message; the November e-mail messages do not appear in this record.

Chelmsford. In January, 2015, the father filed three complaints for contempt -- one for the alleged violations relating to e-mail communications; one for alleged violations of the visitation exchange protocol; and a third, described by the judge as a "catchall" complaint.[4]

At the contempt hearing, each party appeared pro se. The mother testified that, because she was not served with the attachments to the plaintiff's complaint, she was not given proper notice of the charges against her. Specifically, with respect to the complaint relating to e-mail communications, the mother argued that she had not been provided with a copy of the e-mail messages the father offered in support of his complaint. As to the complaint relating to the visitation exchange location, she argued that the parties had "a clear order" from the parent coordinator that "the exchanges took place exclusively in Pepperell." Although the judge offered to continue the hearing to another day so that the mother had sufficient time to receive and review the documentation she claimed she had not received, she responded that she "would rather just get it over with today."

---

[4] The father's "catchall" complaint for contempt was dismissed during the hearing after the judge determined that the allegations therein were duplicative of those contained in the first two complaints.

Based on the evidence presented at the hearing, the judge found the mother in contempt, concluding that, although the mother had the ability to comply, she "willfully [had] violated" the orders of the parent coordinator. The judge noted in her findings that the court had "played no role in the parties' decision to give the [p]arent [c]oordinator binding authority" and that the parties "clearly [had] expressed their advance consent to be bound by a decision of the [p]arent [c]oordinator in their [s]eparation [a]greement." The judge also found that "the fact that the [s]eparation [a]greement provided that either party could bring the matter before the [c]ourt before the decision was to take effect to try and obtain a contrary order, does not in any way diminish the binding authority delegated to the [p]arent [c]oordinator by the parties" (emphasis in original).

Regarding the e-mail communications, the judge concluded that "on seventy . . . separate occasions between December 23, 2013, and February 25, 2013,"[5] the mother had violated the

---

[5] The judge reviewed "each and every email" message submitted by the father at the hearing, but considered only those sent after the coordinator's December 21, 2013, clarifying e-mail message. Some of the mother's e-mail messages appear in this record, but it is unclear if these represent all of the e-mail messages the judge considered. This does not, however, affect the result.

order.[6]  With regard to the custody exchanges, the mother

likewise committed violations "on fifteen . . . separate

occasions between September 3, 2014, and December 30, 2014," by

"consistently delivering the children to the Pepperell Police

[s]tation instead" of the Chelmsford Police station as ordered.[7]

As a result, the judge ordered that, if the mother

continued to violate the parent coordinator's order relating to

e-mail communications, her parenting time might be suspended

until she addressed her behavior with a family therapist.  The

father was allowed to make up twelve days of parenting time, and

the mother was to reimburse him a total of eighty-eight dollars

for the costs associated with the service of process.

The judge denied the mother's motions for relief from the

judgments pursuant to Mass.R.Dom.Rel.P. 60.  Thereafter, the

judge also issued a supplemental judgment and findings nunc pro

tunc as to each complaint, more fully explaining her rationale.

---

[6] The judge noted that many of the e-mail messages sent by
the mother were "written in all capital letters and reference[d]
'MY CHILDREN' demonstrat[ing] the [mother]'s ongoing urge to
struggle with the [father].  The hostile and dictatorial tone of
the emails is counter-productive to effective co-parenting of
the minor children."

[7] At the contempt hearing, the mother did not claim that she
was unable to comply with the coordinator's order, but argued
instead that the father had misunderstood the directives
contained in earlier e-mail messages of the parent coordinator;
the judge did not find the argument credible.  Instead, she
found that, by insisting on bringing the children to the wrong
pickup location, the mother deliberately had interfered with the
father's scheduled parenting time.

She noted that the mother "had the opportunity to review the emails before the hearing had she chosen to since they were authored by her."  Also, based on the mother's demeanor and testimony at the hearing, the judge did not credit her statement that she had believed, based on the parent coordinator's decision, that the proper place for weekday drop off was Pepperell.  The wife timely appealed.

Discussion.  The mother now argues that the judge erred in treating the parent coordinator's decision as a court order. She contends that the decision held no legal weight because it was not approved by the court or incorporated into a judgment entered by the court; she maintains further that it was the father's responsibility to seek judicial approval of the coordinator's decision and to have it entered as a court order before it could be enforced.  We disagree.

First, it is undisputed that the separation agreement provided that the parties freely granted advance consent to be bound by the decisions of a mutually selected parent coordinator; the agreement also included an option for either party to seek judicial modification or termination of any disputed order.  The separation agreement stated that "[t]he decisions of the [p]arenting [c]oordinator will be binding on the parties unless altered, modified, or terminated by [c]ourt order."  The agreement was then incorporated into the judgment

of divorce nisi, and entered on the court's docket, giving it the full force of an order of the court. Mass.R.Dom.Rel.P. 58(a); Mass.R.Civ.P. 79(a), 365 Mass. 839 (1974). This language clearly and unequivocally required the parties to abide by the parent coordinator's future decisions unless the court ordered otherwise. A violation of any part of a final decree, such as the divorce judgment entered here, may constitute civil contempt. See Wooters v. Wooters, 74 Mass. App. Ct. 839, 843 (2009), quoting from Mahoney v. Mahoney, 65 Mass. App. Ct. 537, 540 (2006) ("To constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command").

Second, it is well established that judges of the Probate and Family Court possess the inherent authority to appoint parent coordinators in certain circumstances and within certain boundaries. See Bower v. Bournay-Bower, 469 Mass. 690, 698-700 (2014). They may not, however, compel an unwilling party to submit to a nonjudicial third-party decision-making authority. Id. at 701.

In this case, however, unlike in Bower, the judge played no role in the appointment of the parent coordinator. Rather, the parties clearly expressed their agreement to use a parent coordinator, specifically naming the coordinator to be retained, and consenting in advance to be bound by the coordinator's decisions, unless either party sought judicial review and an

alternate order. The fact that the right to judicial review was included in the agreement ensured an adequate safeguard of each party's constitutional right to free access to the court. See id. at 704. "When such an agreement exists, no improper delegation of a judge's authority follows." Gravlin v. Gravlin, 89 Mass. App. Ct. 363, 366 (2016). Cf. Bower, supra at 708 ("in some circumstances the delegation of certain judicial tasks to quasi judicial officers or third-party neutrals is permissible"). Contrast Ventrice v. Ventrice, 87 Mass. App. Ct. 190, 193 (2015), discussing and quoting from Bower, supra at 703 n.12 ("While recognizing that courts have the inherent power to appoint dispute resolution officials in appropriate circumstances, the Supreme Judicial Court stressed that it is the judge -- and, absent agreement of the parties, only the judge -- who shall make the final, binding decision in each case" [emphasis supplied]).

When the judge approved the agreement, she did not "shift the final decision-making authority granted by a statute to a third party" rendering "the order an unlawful delegation of judicial authority." Contrast Bower, supra at 707. Instead, the authority granted to the parent coordinator through the parties' consent was a beneficial feature of the agreement, while retaining the judge's "nondelegable duty to make the final and binding resolution of the case." Gravlin, supra at 366-367,

quoting from Ventrice, supra at 194. The judge correctly determined that "[i]f the language that the parties agreed to be bound by is not enforceable, it would be meaningless." See Rae F. Gill, P.C. v. DiGiovanni, 34 Mass. App. Ct. 498, 502 (1993).

Third, the order of the parent coordinator did not affect the material terms of the judgment as to the children's primary custody or the father's right to visitation. The parent coordinator's order merely altered the logistical coordination of visitation, and limited the mother's "ongoing urge to struggle" with the father through the use of "hostile and dictatorial tone[d]" e-mail messages, which the judge found to be "counter-productive to effective co-parenting." This effective and permissible use of the parent coordinator's services did not impinge on the judge's inherent authority. See Gravlin, supra.

For these reasons, we agree that the father met his burden of establishing as to both complaints "a clear and undoubted disobedience of a clear and unequivocal command."[8] Wooters, supra, quoting from Mahoney, supra. After finding by clear and convincing evidence that the mother violated a court order, the

---

[8] The mother stated at the hearing that the violation dates listed in the father's complaint for contempt were correct as to Wednesday night visits with the children; the judge determined that, on those occasions, the mother brought the children to the Pepperell police station for pickup by the father rather than the Chelmsford police station as the parent coordinator had ordered.

judge did not abuse her discretion in finding the mother in contempt.  See K.A. v. T.R., 86 Mass. App. Ct. 554, 567 (2014).

The judgment on the e-mail violations, dated March 5, 2015, and the supplemental judgment on the e-mail violations, dated May 19, 2015, nunc pro tunc March 15, 2015, is affirmed.  The judgment on the visitation exchange violations, dated March 5, 2015, and the supplemental judgment on the visitation exchange violations, dated May 19, 2015, nunc pro tunc March 5, 2015, is affirmed.

So ordered.[9]

---

[9] As stated in the March, 2015, contempt judgment and May, 2015, supplemental judgment on the e-mail violations, the judge did not consider any e-mail messages sent by the mother prior to December 21, 2013; also, there is nothing in the contempt hearing transcript indicating that the father submitted for the judge's review a copy of the contract between the parties and the parent coordinator.  For these reasons, the mother's motion to strike the contents of the addendum to the father's brief is allowed, as are any references contained in his brief that refer to the addendum.  The mother's request for attorney's fees is denied.