NAD, INC., AKA NORTH AMERICAN DRAGER, INVIVO RESEARCH , INC., PETITIONERS, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE MARK GIBBONS, DISTRICT JUDGE, RESPONDENTS, AND SOUTHERN NEVADA SURGICAL CENTER, A SHARON C. FRANK PROFESSIONAL CORPORATION; SOUTHERN NEVADA SURGICAL CENTER, A LIMITED PARTNERSHIP DBA SOUTHERN NEVADA SURGICAL CENTER; SURGEX-SOUTHERN NEVADA, INC., GENERAL PARTNER OF SOUTHERN NEVADA SURGICAL CENTER, A LIMITED PARTNERSHIP; AND SURGEX, INC., A FOREIGN CORPORATION, REAL PARTIES IN INTEREST.

No. 31476

April 26, 1999                     976 P.2d 994

---

*Edwards, Hale, Sturman & Atkin, Ltd.,* Las Vegas, for Petitioner NAD, Inc.

*Perry and Spann* and *Monique Laxalt,* Las Vegas, for Petitioner Invivo Research.

*Vannah Costello Howard Canepa Wiese & Reidy* and *G. Randall Rostad,* Las Vegas, for Real Party in Interest Surgex.

*Harrison, Kemp & Jones* and *Jerome R. Bowen,* Las Vegas; *Jones Vargas,* Las Vegas, for Real Parties in Interest Southern Nevada Surgical Center and Surgex.

# OPINION

*Per Curiam:*

## SUMMARY

North American Drager, Inc. ("NAD") and Invivo Research ("Invivo") filed a motion to name Continental Casualty Company ("CNA") as a third-party plaintiff, alleging that CNA was the real party in interest because CNA's loan receipt agreement with its insureds was an ineffective means of preventing subrogation. The district court denied this motion. Thereafter, NAD and Invivo filed a petition for writ of mandamus, requesting that this court compel the district court to name CNA as the real party in interest. NAD alleges extraordinary injustice and irreparable harm as a result of CNA's alleged use of its non-party status as a shield to prevent NAD from ascertaining discoverable facts. For the reasons set forth below, we conclude that extraordinary relief is not

warranted in this case because the loan receipt agreement was an effective means of avoiding subrogation, and further, NAD and Invivo have failed to demonstrate extraordinary injustice and irreparable harm.

## FACTS

Jason Nault sustained severe brain damage during a bilateral laproscopic hernia operation when an oxygen-supplying endotracheal tube became disconnected. Dr. Sprague, Nault's anesthesiologist from Clark County Anesthesia Associates, allegedly failed to notice the disconnected oxygen tube for some period of time despite the fact that he used several vital sign monitors.

Nault's surgery was performed at Southern Nevada Surgical Center ("SNSC"), a subsidiary of Surgex, Inc. ("Surgex").[1] SNSC owned the Invivo monitor and the NAD anesthesia machine used in Nault's surgery. This anesthesia machine, monitor, and other electrical equipment were inspected quarterly by Life Support Services, Inc. ("LSSI").

A negligence action was filed in the name of Jason Nault, now incompetent, and by his wife, Louise Nault, naming SNSC, Surgex, LSSI, NAD, Clark County Anesthesia Associates, and others, although NAD was later dismissed by the Naults. Thereafter, Surgex filed a third-party complaint for contribution and indemnity against NAD and Invivo. NAD, Invivo, and LSSI responded with a motion to dismiss for failure to state a claim and a motion to name CNA, Surgex's and SNSC's mutual insurer, as a third-party plaintiff, alleging it was the real party in interest (hereinafter "motion to name CNA as the real party in interest").

Prior to the hearings on these motions, LSSI, SNSC, Surgex, and CNA settled with Jason, Louise, and their daughter, Renee Rose Nault, for seventeen million dollars ($17,000,000.00). The settlement agreement signed by the parties required the Naults to:

> agree to release all claims against CNA INSURED DEFEN-DANTS . . . including potential wrongful death claims. Upon request of the CNA INSURED DEFENDANTS, Naults agree to release all claims against all or any defendant(s) in the above-entitled matter, (i.e., North American Drager and Invivo Research, Inc.), or all or any defendant(s) or third-parties who may be involved in said action.

---

[1]We note that we have simplified the business structure for purposes of this opinion. The true form of the business structure is as follows: Southern Nevada Surgical Center, a Sharon Frank Corporation, Southern Nevada Surgical Center, a limited partnership doing business as Southern Nevada Surgical Center Surgex-Southern Nevada, Inc., a general partner of Southern Nevada Surgical Center, a limited partner, of Surgex, Inc., a foreign corporation.

The settlement agreement further required SNSC and Surgex to pay the Naults fourteen million dollars ($14,000,000.00) of the total settlement amount. In connection with this settlement agreement, SNSC, Surgex, and CNA entered into a "Loan Receipt Agreement" that provided as follows:

1. That Lender [CNA] hereby agrees to lend the Borrowers [SNSC and Surgex] the principal sum of FOURTEEN MILLION DOLLARS ($14,000,000.00) (the "Loan"). Lender understands and agrees that the Loan will be used for settlement with the Plaintiffs [the Naults] in exchange for the release of All Claims re: any and all past, present and future claims,

. . . .

2. The parties hereto agree that the obligation and liability of the Lender to pay the Loan . . . is not absolute and undetermined

. . . .

4. Lender understands and agrees that should no recovery be made against any party alleged to be legally liable for the aforementioned Plaintiffs' claims and injuries subsequent to litigation, the Borrowers . . . are not liable for repayment of any amount or part of the FOURTEEN MILLION DOLLARS ($14,000,000.00), . . . .

On April 19, 1996, the district court approved the settlement agreement, finding it was made in good faith. Thereafter, the district court denied NAD's motion to dismiss, and also denied NAD's motion to name CNA as the real party in interest. Accordingly, SNSC and Surgex remained the real parties in interest in the action for contribution and indemnity against NAD and Invivo.

NAD and Invivo sought to depose Nick Pisani ("Pisani"), a CNA attorney who participated in the settlement negotiations with the Naults. CNA alleged that NAD and Invivo could not depose Pisani because any information he had was either irrelevant or protected by the attorney-client privilege and public policy. On March 12, 1997, the discovery commissioner recommended a protective order prohibiting NAD from taking the deposition because "there would be no relevant purpose in the present litigation for taking the deposition of Nick Pisani, at least as to any possible reasons raised by Drager [NAD] thus far."

Alleging, among other things, that CNA was using its non-party status as a shield to prevent NAD from ascertaining discoverable facts from Nick Pisani, NAD and Invivo filed a petition for writ of mandamus, requesting that this court direct the district court to name CNA as the real party in interest to prevent extraordinary injustice and irreparable harm.

## DISCUSSION

A writ of mandamus is an extraordinary remedy, and it is within the sole discretion of this court to determine if a petition for writ of mandamus will be granted. Poulos v. District Court, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982); *see also* State ex. rel. Dep't Transp. v. Thompson, 99 Nev. 358, 360, 662 P.2d 1338, 1339 (1983). Mandamus will generally not lie to control discretionary action and will not lie if the petitioner has a plain, speedy, and adequate remedy at law. Round Hill General Imp. Dist. v. Newman, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981); *see also* NRS 34.170.

In the matter at bar, NAD and Invivo petition for a writ of mandamus, asking this court to compel the district court to name CNA as the real party in interest. Based on the reasons set forth below, we deny this petition because the district court's order denying petitioners' motion to name CNA as the real party in interest was a proper ruling within the district court's discretion.

*The district court properly found that CNA was not the real party in interest*

NRCP 17(a) provides, in relevant part, that "[e]very action shall be prosecuted in the name of the real party in interest." This language mandates that only a real party in interest may pursue an action in order to enable a defendant to avail himself of discoverable evidence and relevant defenses and assure him finality of judgment. *See* Mason-Rust v. Laborer's Int'l Union Local 42, 435 F.2d 939, 944 (8th Cir. 1970).

NAD and Invivo contend that pursuant to NRS 17.275, CNA is the subrogee of its insureds, and thus the real party in interest. Indeed, where a liability insurer has paid an insured's tort liability in full or in part, thereby discharging an obligation owed to that insured, the liability insurer is a subrogee, and is thus a real party in interest. *See* NRS 17.275; *see also* Valley Power Co. v. Toiyabe Supply Co., 80 Nev. 458, 460, 396 P.2d 137, 138 (1964)

However, in Nevada, an insurer is neither a subrogee nor a real party in interest in a third party contribution instituted by its insured when the insurer enters into a valid loan receipt agreement with its insured. Central Nat. Ins. Co. v. Dixon, 93 Nev. 86, 87, 559 P.2d 1187, 1188 (1977). A loan receipt agreement is a written agreement between an insurer and an insured where the insurer promises to loan the insured a sum of money, which is

repayable only if the insured recovers a portion of the insurable loss from a third party. *Id*. The determination of whether the transfer of money from an insurer to an insured is a loan or a payment is based on the intent of the parties. V. Woerner, Annotation, *Insurance: Validity and Effect of Loan Receipt Agreement Between Insured and Insurer for a Loan Repayable to the Extent of Insured's Recovery from Another,* 13 A.L.R.3d 42 (1967).

In upholding loan receipt agreements where the parties so intend, we join the majority of jurisdictions that recognize that a loan receipt agreement is a proper means for an insurer to avoid subrogation, and thereby avoid being named a real party in interest in a third party contribution action.[2] *See, e.g.,* Luckenbach v. McCahan Sugar Refining Co., 248 U.S. 139 (1918); R.J. Enstrom Corp. v. Interceptor Corp., 520 F.2d 1217 (10th Cir. 1975); Celanese Corp. v. John Clark Indus., 214 F.2d 551 (5th Cir. 1954); Perrera v. Smolowitz, 11 F.R.D. 377 (E.D.N.Y. 1951). We validate these contracts based on the well-established principle that parties are free to contract in any lawful matter, and that the prompt settlement of an injured party's claim shall be fostered. *See* Northern Insurance Co. of New York v. Conn Organ Corp., 596 P.2d 605 (Or. App. 1979).

In the present matter, the fact that CNA entered into a written contract called a loan receipt agreement with its insureds that stated that CNA was loaning them fourteen million dollars for purposes of settling with the Naults is compelling evidence of the parties' intent that the funds provided to the insured constituted a loan to the extent the insured recovered from a third party. *See* Furrer v. Yew Creek Logging Co., 292 P.2d 499, 502 (Or. 1956). Moreover, although CNA's counsel warranted to the district court during the good faith settlement hearing that it was directly making payment to the Naults, the existence of collateral evidence that the transaction was not consistently treated as a loan is not conclusive. *See* Northern Insurance Co. of New York v. Conn Organ Corp., 596 P.2d 605, 611 (Or. App. 1979). Accordingly, we conclude that the loan receipt was valid because CNA, Surgex, and SNSC intended to enter into such an agreement.

---

[2]We note that a minority of jurisdictions have held that loan receipt agreements are invalid. *See, e.g.,* City Stores Co. v. Lerner Shops of District of Columbia, Inc., 410 F.2d 1010 (D.C. Cir. 1969); Condor Inv. Co. v. Pacific Coca-Cola Bottling Co., 211 F. Supp. 671 (D. Or. 1962); Shealy v. Campbell, 485 N.E.2d 701 (Ohio 1985).

*NAD and Invivo failed to establish irreparable harm*

NAD and Invivo further contend that they were irreparably harmed when CNA was able to successfully use its non-party status arising out of the loan receipt as a shield to prevent them from conducting discovery relative to how the overall settlement figure was determined. We see no evidence in the record to support this contention. Although the discovery commissioner mentioned the denial of the motion to name CNA as a real party in interest in his findings on this issue, he precluded discovery on relevance grounds. Because there is no evidence that the discovery commissioner considered CNA's non-party status in making his recommendations on discovery to the district court, we conclude that NAD and Invivo have failed to show irreparable harm or extreme prejudice that would warrant extraordinary relief.[3]

Notwithstanding our conclusion that NAD and Invivo have failed to establish that the loan receipt agreement was void or caused them irreparable harm, we now take this opportunity to clarify whether an insurer can utilize its non-party status created through a loan receipt agreement to inhibit discovery.

An insurer is an agent of its insured for purposes of litigation arising from an insurance policy, and entering into a loan receipt agreement does not destroy this agency relationship. *See* 2A C.J.S. *Agency* § 50 (1972). Additionally, despite the loan receipt agreement, an insurer is an agent of the insured for discovery purposes in such actions because the insurer retains control of the litigation. *See id.* § 52. Because of this agency relationship, a third party may seek to discover from the insurer anything relevant pursuant to NRS 17.225. Accordingly, we conclude that a district court may not allow an insurer who has entered into a loan receipt agreement to shield itself from discovery based on its non-party status.

## CONCLUSION

We conclude that the district court properly found that CNA was not a real party in interest because it had entered into a valid loan receipt agreement with its insureds. Moreover, we conclude

---

[3]In the present matter, the discovery commissioner found that evidence concerning the calculation of the amount of the settlement paid to the Naults was irrelevant. The apparent basis of this finding was that petitioners failed to oppose the formal approval of the settlement as in good faith. Thus, the discovery commission gave collateral estoppel effect to the prior good faith determination. Because the issue was not raised in this petition, the appropriateness of this finding will have to be determined upon direct appeal.

that NAD and Invivo have failed to demonstrate that they suffered irreparable harm or extreme prejudice as a result of the district court's ruling. We, therefore, deny this petition.[4]

---

[4]The Honorable A. William Maupin, Justice, voluntarily recused himself from participation in the decision of this appeal.