■ In the Matter of LAURIE A. MIOSKY, Appellant-Respondent, v JON M. MIOSKY, Respondent-Appellant. [823 NYS2d 269]—

Spain, J. Cross appeals from an order of the Family Court of Otsego County (Coccoma, J.), entered March 15, 2005, which, inter alia, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

The parties are the parents of two daughters (born in 1988 and 1991), now ages 17 and 15. In July 2003, Family Court approved the parties' agreement giving respondent (hereinafter the father) sole custody of the daughters and petitioner (hereinafter the mother) visitation "subject to the children's wishes." That agreement required the father to "encourage the children in anticipating periods of visitation with the mother," to keep her "informed of the whereabouts of the child[ren]" and to "exert every reasonable [effort] to maintain free access and unhampered contact between the children and their mother, and to foster [their] meaningful relationship" and not "do anything which may estrange the children" from their mother.

March 2004 marks the genesis of the breakdown of any meaningful relationship between the daughters and their mother, when the father surreptitiously decided to move to Florida with the daughters, his new wife and her children. When the mother learned of this, she immediately filed a petition requesting a temporary order directing the father not to relocate the children until the matter could be heard. The mother also alleged that the father had refused her phone calls, communication and visits with the daughters and isolated them from her, thereby willfully violating the custody order. No temporary order was issued. The father ultimately failed to appear, having moved to Florida while that petition was pending. By decision and order of June 21, 2004, Family Court determined after hearing proof from the mother that she had demonstrated that the father had "committed multiple, intentional violations of the [July 2003 custody order]," including blocking the mother's regular attempts to communicate and visit with the daughters and by moving to Florida without telling her or providing their address. The court found, however, that the father's violations were an insufficient basis upon which to justify a change in physical custody.

The mother commenced the instant proceeding in May 2004 by order to show cause seeking an order requiring the father to return the children to New York and for an immediate temporary order of custody. Family Court ordered the father to appear with the daughters, and the hearing began on June 30, 2004, when the court held an in camera *Lincoln* hearing with the girls. Notably, the daughters were permitted to return to Flor-

ida with the father and the hearing was not concluded until February 2005. The mother testified, expressing a genuine desire to resume a regular role in her daughters' lives and tremendous heartache at being systematically excluded from their lives since she agreed to give the father custody. She explained that at the time she made that decision, she had a newborn and another young daughter and was experiencing turmoil in her relationship with the infant's father and difficulty managing her daughters' teenage rebellion.

The minimal proof at this unduly protracted hearing established that Child Protective Services had investigated the mother in March 2003 and later issued an indicated, substantiated report based upon the girls' accounts for lack of supervision, inadequate guardianship, and drug and alcohol abuse. During that period of time, the mother agreed that the girls could live with their father. Thereafter, she had little contact with them, as the father began obstructing her efforts to communicate. She was living in a shelter until December 2003 and did not feel able to pursue visitation, but renewed efforts to contact them in January 2004. After they moved to Florida, most of her repeated efforts to communicate with them were thwarted by the father and his wife, including his violation of an October 2004 court order for scheduled phone contact. The daughters came to New York in November 2004 for a court-ordered five hour Thanksgiving visit with their mother, which she described as having gone well and allowing communication, despite the father's obstructionist conduct in unnecessarily involving the local police and sitting outside during the entire visit in his vehicle with his headlights facing into the mother's living room. The December 2004 court-ordered three-day holiday visit, however, can only be described as a disaster as the eldest daughter arrived openly hostile, verbally abusive and out of control, and later scolded the younger sister's efforts to respond to their two younger siblings. When it became clear the next morning that they would not cooperate with the visit, the mother allowed them to return to Florida immediately. Unfortunately, although requested, no subsequent in camera hearing was conducted and no further court-ordered visitation has occurred.

The father was represented by counsel who called minimal witnesses on his behalf at the hearing, and neither the father nor any member of his family testified or appeared. As a result, other than from the "in camera" hearing, virtually nothing is known about the father's wife and her children, his employment or home environment, or the daughters' lives in Florida.

Despite the father's various allegations, most of which were never substantiated or were in fact refuted, the evidence did not support the conclusion that the mother had a psychiatric disorder or alcohol problem or that there was any cause at any time since her March 2004 petition for denying the daughters' regular visitation and communication with their mother. During the final day of the hearing, in February 2005, the mother withdrew her petition with regard to the elder daughter, believing it to be futile to compel contact with her in view of her advanced age, steadfast unwillingness and the passage of time. She maintained her request, however, with regard to the younger daughter who she still perceived was receptive. The Law Guardian advocated that the children remain with their father but in favor of court-ordered visitation between the younger daughter and mother.

By decision and order entered March 15, 2005, Family Court denied the mother's petition for custody of the younger daughter and continued visitation subject to the children's wishes, granting the mother unfettered telephone, e-mail and correspondence access to and from the daughters. The court held that while the father's relocation had not been expressly prohibited by the July 2003 custody order, it had hindered the possibility of a meaningful relationship. The court found that he had violated the commitments he made in the custody agreement and "estranged the children from their mother, injured their opinion of their mother, and hampered free and natural development of the love and respect of the children for their mother [which] can only result in permanent long term psychological damage to the children." The court held that this constituted a change in circumstances, but concluded that it had not been demonstrated to be in their best interests to live with different parents. The court, however, admonished the father "for his seemingly unrelenting attempts to alienate the affections of the girls toward their mother and urge[d] him, for the sake of the girls, to encourage and foster a meaningful relationship between the girls and their mother."

On the mother's appeal, we are not persuaded to disturb Family Court's determination that remaining with the father is in the younger daughter's best interests, but agree with the mother that visitation between the mother and that daughter—who is now 15 years of age—should not, under these circumstances, have been left to the child's wishes. While modification of an existing custody order requires "a showing of sufficient change in circumstances reflecting a real need for change in order to insure the continued best interest of the child" (*Matter of Van Hoesen v Van Hoesen*, 186 AD2d 903, 903 [1992]), less

weight is afforded an existing arrangement which is based upon a stipulation, as here (*see Matter of Mehaffy v Mehaffy*, 23 AD3d 935, 936 [2005], *appeal dismissed* 6 NY3d 807 [2006]), and the preference for keeping siblings together may be overcome if the best interests of each child so warrants (*see Matter of Delafrange v Delafrange*, 24 AD3d 1044, 1046 [2005]). Clearly, the father's conduct since that July 2003 order constituted such a change in circumstances. Further, the father's willful interference with the mother's access rights as a parent raises serious questions about his fitness (*see Matter of Glenn v Glenn*, 262 AD2d 885, 887 [1999], *lv dismissed and denied* 94 NY2d 782 [1999]). Moreover, his failure to testify despite ample opportunity to do so allowed the strongest possible inference to be drawn against him (*see Matter of Jared XX.*, 276 AD2d 980, 983 [2000]). Most troubling, it resulted in a record that was never fully developed with regard to facts bearing upon the younger daughter's best interests (*see Matter of Smith v Miller*, 4 AD3d 697, 698 [2004]). Further, as Family Court recognized, the mother had long since turned her life around and "[h]er love for her children is unquestioned."

In our view, while the limited record before us does not support a change in custody, Family Court should not have relegated visitation to the younger daughter's wishes, as she was clearly caught in the crossfire and under undue influence. All indications were that she would have benefitted from and desired a relationship with her mother and her younger siblings. Moreover, the mother—as a noncustodial parent—and the daughter have a natural right to visitation, provided it is in the child's best interests (*see Weiss v Weiss*, 52 NY2d 170, 174-175 [1981]; *see also Matter of Tropea v Tropea*, 87 NY2d 727, 736 [1996]), and the record supports that conclusion. However, since the last in camera hearing was in June 2004 and the nature of the relationships at this point in time, if any, is not part of the record, we must remit to Family Court for immediate consideration of court-ordered visitation between the younger daughter and the mother based upon an updated in camera hearing, if necessary, and any hearing deemed advisable, at which the parents and the child will be given an opportunity to be heard.

Finally, to the extent that the father appeals from Family Court's determination to suspend the mother's child support payments until further court order, we find compelling, uncontroverted record support for that determination (*see Usack v Usack*, 17 AD3d 736, 737-739 [2005]; *cf. Foster v Daigle*, 25 AD3d 1002, 1003-1005 [2006], *lv dismissed* 6 NY3d 890 [2006]).

Cardona, P.J., Mercure, Carpinello and Mugglin, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as continued visitation between the younger daughter and petitioner to be subject to said daughter's wishes; matter remitted to the Family Court of Otsego County for further proceedings not inconsistent with this Court's decision, and pending further proceedings, any presently existing pattern of visitation between petitioner and said daughter shall continue; and, as so modified, affirmed.