132 Nev., Advance Opinion 54

IN THE SUPREME COURT OF THE STATE OF NEVADA

KIRK ROSS HARRISON,
Appellant,
vs.
VIVIAN MARIE LEE HARRISON,
Respondent.

No. 66157

**FILED**

JUL 2 8 2016



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a divorce decree and post-decree orders concerning child custody. Eighth Judicial District Court, Family Court Division, Clark County; Bryce C. Duckworth, Judge.

*Affirmed.*

Kirk Ross Harrison, Boulder City; Lemons, Grundy & Eisenberg and Robert L. Eisenberg, Reno,
for Appellant.

Radford J. Smith, Chtd., and Radford J. Smith, Henderson; Silverman, Decaria & Kattelman, Chtd., and Gary R. Silverman and Mary Anne Decaria, Reno,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, DOUGLAS, J.:

This appeal raises two issues of first impression concerning the balance between contractual obligations and public policy concerns. The parties to this appeal share joint legal and physical custody of their

11/3/16: Corrected per letter to publishers. CT

16-23434

two minor children as stated in a stipulated order. One provision of the parties' agreement provides that when a child reaches the age of 14, it is within the child's "teenage discretion" to determine time spent with either parent, so long as the joint physical custody agreement remains intact. A second provision provides for a "parenting coordinator" to resolve disputes and authorizes the district court to issue an order defining the coordinator's role. Appellant argues that both contractual provisions should be invalidated because they are against public policy. We conclude that neither provision violates the paramount public policy concern in child custody matters—the best interest of the child, nor does the parenting coordinator provision improperly delegate decision-making authority. Therefore, we affirm.

## BACKGROUND

Appellant Kirk Harrison filed for divorce from respondent Vivian Harrison in 2011. After extensive proceedings and settlement negotiations in the district court, Kirk and Vivian entered into a written stipulation as to the custody arrangement for their two minor children, which was adopted by the district court. The district court's stipulated order granted Vivian and Kirk joint legal and physical custody of their two minor children. One provision of the order provides for "teenage discretion" in determining time spent with either parent when a child reaches the age of 14. Another provision confers authority to resolve disputes to a "parenting coordinator" and consents to allow the district court to issue an order that defines the coordinator's role if the parties do not agree.

After the district court entered the stipulated order, conflict regarding its interpretation arose. Vivian argued that the teenage

SUPREME COURT
OF
NEVADA

(O) 1947A

discretion provision allowed the children to make a request to spend time with either parent that the parents must honor. Kirk argued that the provision merely empowered the children to make a request that he or Vivian could deny.

The teenage discretion provision's meaning became important when the Harrisons' oldest daughter reached the age of 14. She then informed Kirk that she planned to exercise her discretion and live with Vivian full-time. According to Kirk, he was deprived of seeing his 14-year-old daughter for two weeks based on Vivian's misinterpretation of the teenage discretion provision. Kirk filed a motion for judicial determination of the teenage discretion provision, but the district court denied Kirk's motion.

Amid the conflict over the teenage discretion provision, Kirk and Vivian never identified a parenting coordinator. Vivian filed a motion for an order appointing a parenting coordinator, wherein she included a proposed order. Kirk opposed the motion, arguing that Vivian's proposed order granted the parenting coordinator too much authority without due process.

Ultimately, the district court issued an order appointing a parenting coordinator and ruling that the purpose of the parenting coordinator was "to resolve disputes," not merely to provide mediation services. The district court's order also provided that the parenting coordinator's authority was limited to making nonsubstantive recommendations regarding ancillary matters, such as scheduling, and that the recommendations were not final and not immediately effective. Thus, if either party objected to the parenting coordinator's

recommendation, the order provided a procedure to seek review by the court.

After the district court issued the order appointing a parenting coordinator, Kirk filed a motion to modify the original stipulated child custody order. He argued that the teenage discretion provision should be rendered void as against public policy, or in the alternative, construed as merely empowering the Harrisons' 14-year-old daughter to make a request that could be denied. He further argued that the parenting coordinator provision should be rendered void because it was not the result of a meeting of the minds.

At the subsequent hearing, the district court explained that an interpretation that merely empowered the children to make a request rendered the provision meaningless, but that the provision was not an instrument whereby the joint custody arrangement could be altered. In addition, the district court noted that the parties had agreed to the parenting coordinator provision and concluded that there was no basis to modify it. The district court denied Kirk's motion in its written decision. Kirk now appeals.

## DISCUSSION

We have held that "[p]arties are free to contract, and the courts will enforce their contracts if they are not unconscionable, illegal, or in violation of public policy." *Rivero v. Rivero*, 125 Nev. 410, 429, 216 P.3d 213, 226 (2009). We also recognize broad discretionary powers for district courts when deciding child custody matters. *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 241 (2007). Absent a clear abuse of discretion, we will not disturb a district court's custody determinations. *Id.* Thus, the stipulated order in this case must only yield to violations of public policy.

*See Miller v. A & R Joint Venture*, 97 Nev. 580, 582, 636 P.2d 277, 278 (1981) (discussing public policy as a limitation on the enforceability of a contract).

*Teenage discretion provision*

Kirk argues that this court should modify the stipulated order by invalidating the teenage discretion provision because it is against public policy. Alternatively, Kirk requests that this court construe the provision to provide teenage discretion to make a schedule change request that the parents can deny.[1]

The teenage discretion provision states:

> 6. Notwithstanding the foregoing time-share arrangement, the parents agreed that, once each child reaches the age of fourteen (14) years, such child shall have "teenage discretion" with respect to the time the child desires to spend with each parent. Thus, while the parents acknowledge the foregoing time-share arrangement, the parents further acknowledge and agree that it is in the best interest of each of their minor children to allow each child the right to exercise such "teenage discretion" in determining the time the child desires to spend with each parent once that child reaches 14 years of age.

> 6.1. The parties do not intend by this section to give the children the absolute ability to determine their custodial schedule with the other parent. Rather, the parties intend to allow the

---

[1]We note that Kirk's opposition to the agreed-upon terms did not arise until more than a year after the stipulated order was issued—when his oldest daughter turned 14.

children to feel comfortable in requesting and/or making adjustments to their weekly schedule, from time to time, to spend additional time with either parent or at either parent's home.

*Modification by invalidation*

In any action for determining physical custody of a minor child, "the sole consideration of the court is the best interest of the child." NRS 125.480(1) (2009); *see Ellis*, 123 Nev. at 149, 161 P.3d at 242. If the parents agree to joint physical custody, there is a presumption "that joint custody would be in the best interest of a minor child." *See* NRS 125.490(1) (1981).[2] The Harrisons agreed that joint physical custody was in the best interests of their children. Thus, our particular policy concern is preserving the agreed-upon joint physical custody arrangement.

The teenage discretion provision does not violate the joint physical custody arrangement. The agreement permits the children to adjust "their weekly schedule, from time to time." But that flexibility is necessarily limited. Section 6.1 provides: "The parties do not intend . . . to give the children the absolute ability to determine their custodial schedule with the other parent." Thus, section 6.1 reinforces that child-initiated schedule changes may not take so much liberty that they violate the joint custody arrangement set forth by the district court. And if the custody arrangement is in jeopardy, then the Harrisons may seek resolution through the agreed-upon parenting coordinator, followed by review from the district court. Therefore, rather than detracting from the district court's authority, as the dissent claims, the terms of the agreement

---

[2]On October 1, 2015, the statute was NRS 125.510(1)(b) (2013).

reinforce that the district court will have the ultimate say over matters that concern it. Hence, the dissent's claim of judicial intrusion fails to acknowledge the clear black letter of the agreement providing only limited discretion to adjust weekly schedules without modifying the joint physical custody arrangement. The limited discretion is the key factor for maintaining joint custody.

We conclude that the Harrisons have the right to confer that discretion on their teenage children.[3] Parents have a fundamental liberty interest in the care, custody, and control of their children, although that right is not absolute. *Kirkpatrick v. Eighth Judicial Dist. Court*, 119 Nev. 66, 71, 64 P.3d 1056, 1059 (2003). States may limit parental authority, but those limitations are generally only necessary where the opposing interest is the fundamental right of a child, *see id.* (balancing a parent's interest in consenting to a child's marriage against the child's constitutional right to marry), or the safety of a child, *see* NRS Chapter 432B (providing for the protection of children from abuse and neglect). It is not the judiciary's role to limit parental authority where similarly severe concerns are not at stake. *Parham v. J. R.*, 442 U.S. 584, 603 (1979) ("Simply because the decision of a parent is not agreeable . . . or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the

---

[3]The Legislature has also provided a path for mature children to have a voice in determining what is in their best interests. *See* NRS 125.480(4)(a) (2009) ("In determining the best interest of the child, the court shall consider . . . [t]he wishes of the child if the child is of sufficient age and capacity to form an intelligent preference as to his custody.").

SUPREME COURT
OF
NEVADA

(O) 1947A

state."). Weekly schedule changes do not carry the magnitude of concern that we deem sufficiently comparable to enter "the private realm of family life." *See Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (recognizing that the state must "respect[ ] the private realm of family life").

Nevada statutory law does not require families to petition the district court for minor schedule changes, *see generally* NRS 125C.0045(1)(b), and we will not either.[4] Even if we disagree with the Harrisons' decision to grant their teenage children discretion to initiate weekly schedule changes, the power to make that decision does not rest with this court. The Harrisons agreed that joint custody and teenage discretion were in the best interests of their children. Because the teenage discretion provision provides for flexibility without deviating from the joint custody agreement, the best interests of the children remain intact under it. Thus, we decline to invalidate the provision.

*Modification by rewriting*

As to Kirk's alternative request that this court construe the teenage discretion provision to limit the children's discretion even further, making a schedule change request subject to either parent's veto, we also decline. Reaching Kirk's interpretation would require that this court rewrite the parties' custody agreement. As written, each child "shall have" the discretion to choose time spent with either parent to the extent it does not interfere with the joint custody arrangement. The definiteness represented by the Harrisons' use of the word "shall" makes plain their intent to extend teenage discretion. *See State v. Am. Bankers Ins. Co.*, 106

---

[4]On October 1, 2015, the statute was NRS 125.510(1)(b) (2013).

SUPREME COURT
OF
NEVADA

(O) 1947A

Nev. 880, 882, 802 P.2d 1276, 1278 (1990) ("'[S]hall' is presumptively mandatory."). And no words in the provision's language make the children's discretion contingent upon either parent's concurrence. Thus, Kirk's requested interpretation seeks the addition of a contingency term to which he and Vivian did not agree.

We do not rewrite parties' contracts, *see Rivero*, 125 Nev. at 429, 216 P.3d at 226 (recognizing that parties' contracts will be enforced as long as "they are not unconscionable, illegal, or in violation of public policy"), in part, because the parties' failure to agree to a judicially blue-penciled term's inclusion risks trampling the parties' intent, *see Reno Club, Inc. v. Young Inv. Co.*, 64 Nev. 312, 323, 182 P.2d 1011, 1016 (1947) ("This would be virtually creating a new contract for the parties, which they have not created or intended themsel[ve]s, and which, under well-settled rules of construction, the court has no power to do."). It is the contracting parties' duty to agree to what they intend. *See id.* As we are not advocates, it is not our role to partake in drafting. Thus, Kirk's request for the judiciary's advocacy is denied.[5]

*Parenting coordinator provision*

Kirk contends that the parenting coordinator provision that he and Vivian agreed to should be invalidated because it is against the best

---

[5]Although we conclude that the parents do not have absolute veto power over the schedule changes permitted by the teenage discretion provision, the parents nonetheless retain the power to enforce the provision as written, allowing "from time to time" modest adjustments to the weekly custodial schedule that do not interfere with the underlying joint physical custody arrangement.

SUPREME COURT
OF
NEVADA

(O) 1947A

interests of his children and because the judiciary may not delegate its authority. Again, we disagree.

*Defining a parenting coordinator*

The use of parenting coordinators in the family law arena has become a common practice across the country. *See Bower v. Bournay-Bower*, 15 N.E.3d 745, 748-49 (Mass. 2014) (referencing several jurisdictions that allow for the use of parenting coordinators by statute, court rule, or caselaw). In general, parenting coordinators are neutral third-party intermediaries who facilitate resolution of conflicts related to custody and visitation between divorced or separated parents. *Id.* at 748. Thus, parenting coordinators can be described as providing a hybrid of mediation and arbitration services. *Id.* at 748-49.

A parenting coordinator's particular role may vary significantly across jurisdictions. *See, e.g.*, Fla. Stat. Ann. § 61.125(1) (West 2016) (providing that a parenting coordinator's purpose is to facilitate resolution of disputes by providing education, making recommendations, and if the parents have agreed, making limited decisions within the scope of a court order); La. Stat. Ann. § 9:358.4(C) (2008) (providing that a parenting coordinator's role is to assist in resolving disputes and the coordinator is permitted to make recommendations "in a report to the court for resolution of the dispute"); N.D. Cent. Code § 14-09.2-01 (2009) (providing that a parenting coordinator's duty is to use the dispute resolution process "to resolve parenting time disputes by interpreting, clarifying, and addressing circumstances not specifically addressed by an existing court order"); Or. Rev. Stat. Ann. § 107.425(3)(a) (2015) (providing that an individual may be appointed by the court to "creat[e] parenting plans or resolv[e] disputes

regarding parenting time"). In Nevada, parenting coordinators are not authorized by statute. Thus, their role is defined by agreement between the parties, a court order, or both.

*Best interests of the children*

Kirk argues that the parenting coordinator provision is against the best interests of his children because it increases the intrusion of third parties into their lives. We agree that third-party interaction is increased under the term, but we conclude that in this case, such an intrusion, which was agreed to by both Kirk and Vivian, is in the best interests of the children.

Courts in other jurisdictions have acknowledged the benefit of assigning parenting coordinators in particularly contentious cases. *See, e.g., Bower*, 15 N.E.3d at 749. The Harrisons' custody dispute has been highly contentious, marked by frequent accusations and extensive district court proceedings that have been ongoing since 2011. In such an environment, a parenting coordinator could be an outlet for conflict resolution of nonsubstantive issues, thereby minimizing any adverse impact of the persistent conflict on the children. *Id.* at 752; *see Yates v. Yates*, 963 A.2d 535, 539 (Pa. Super. Ct. 2008). For example, the parenting coordinator is authorized to facilitate resolution of scheduling conflicts that may arise from an unexpected cancellation of school or a child becoming ill. *See Bower*, 15 N.E.3d at 752 (recognizing the benefits of a parenting coordinator for these same purposes). The parenting coordinator could also help organize the parents' attendance at special events and parent-teacher conferences. *See id.* Furthermore, access to a parenting coordinator offers dispute resolution sooner than the Harrisons would be able to appear before a judge, which may reduce the likelihood of

contempt complaints or other formal proceedings between the parents. *See id.*

Thus, we cannot conclude, as Kirk claims, that the introduction of a third-party parenting coordinator would further disrupt the children's lives and be disadvantageous to their best interests. In consideration of this case's contentious history, a parenting coordinator's facilitation in resolving time-sensitive, everyday disputes serves the children's best interests, and the district court did not abuse its discretion by refusing to remove the parenting coordinator provision from the custody order on this ground.

### Delegation of judicial authority

Kirk next argues that the parenting coordinator provision, as interpreted by the district court, violates his right to due process because it extends judicial decision-making authority to a third party. We conclude that the district court did not improperly delegate its decision-making authority.

To be sure, a district court does not improperly delegate its authority merely by appointing a third party to perform quasi-judicial duties. *See* NRCP 53(a)(1) (providing that a court may appoint a special master in a pending action); NRS 125.005(1) (permitting the district court to appoint a referee in a custody action); *In re Fine*, 116 Nev. 1001, 1015, 13 P.3d 400, 409 (2000) ("Experts appointed pursuant to an order of a court for the purpose of providing information that a court may utilize in rendering a decision are an arm of the court."). And in this case, the parties voluntarily agreed to the district court's appointment of a parenting coordinator to resolve disputes.

In addition to the parties' consent, we find support in the limitations placed on the parenting coordinator, which our sister states

SUPREME COURT
OF
NEVADA

(O) 1947A

have said preserve judicial authority. The parenting coordinator's authority was limited to resolving nonsubstantive issues, such as scheduling and travel issues, and did not extend to modifying the underlying custody arrangement. *Compare Yates*, 963 A.2d at 540 (upholding the district court's appointment of a parenting coordinator to resolve issues "such as determining temporary variances in the custody schedule, exchanging information and communication, and coordinating [the child's] recreational and extracurricular activities"), *with Dilbeck v. Dilbeck*, 245 P.3d 630, 638 (Okla. Civ. App. 2010) (determining that the parenting coordinator could not be authorized to change a custody order or to make recommendations with regard to whom should have custody), *and* Charles P. Kindregan et al., 2 *Massachusetts Practice Series, Family Law and Practice* § 37:3 (4th ed. 2013) ("It is never appropriate for a parenting coordinator to perform judicial functions (beyond his or her limited delegated authority), such as deciding legal or physical custody arrangements."). In addition, the parenting coordinator's authority was limited by the final decision-making authority maintained by the district court. If either of the Harrisons was dissatisfied with the parenting coordinator's recommendation, the district court's order provided for a procedure to object and seek the district court's review. *See Dieterle v. Dieterle*, 830 N.W.2d 571, 579 (N.D. 2013) (noting that the parties were able to seek review in determining that judicial power was not improperly delegated); *see also Bender v. Bender*, 304 N.Y.S.2d 482, 483 (App. Div. 1969) (noting the same). Because the parenting coordinator's authority was limited in scope and was subject to judicial review, there is no question that judicial integrity was preserved.

And in this light, the dissent's argument that the district court improperly delegated its authority lacks traction. The dissent bases its argument on the fact that judicial review was not required if the parties agreed or if a disagreeing party failed to make an objection. However, we do not impose judicial review where private parties have voluntarily entered into an agreement, especially as it concerns matters ancillary to the district court's jurisdiction. *Cf. In re A.B.*, 128 Nev. 764, 771, 291 P.3d 122, 127 (2012) (providing a two-step approach for review of a master's recommendation regarding the merits of an abuse and neglect petition where there is no mention of any consent from the parties). Moreover, "due process is not offended by requiring a person with actual, timely knowledge of an event that may affect a right to exercise due diligence and take necessary steps to preserve that right." *SFR Invs. Pool 1, LLC v. U.S. Bank*, 130 Nev., Adv. Op. 75, 334 P.3d 408, 418 (2014) (quoting *In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995)); *see also Venetian Casino Resort, LLC v. Eighth Judicial Dist. Court*, 118 Nev. 124, 130, 41 P.3d 327, 330 (2002) (observing that "[a] party who wishes to object to the appointment of a special master must do so at the time of appointment, or within a reasonable time thereafter, or else its objection is waived"). Therefore, we conclude that the dissent's concern for a lack of judicial review is misplaced. We are satisfied that the district court did not improperly delegate its authority and that due process has been preserved.

*NRS 125.005*

As a final matter, we address the applicability of NRS 125.005, which allows a district court to appoint a referee in divorce and child custody cases to "hear all disputed factual issues and make written findings of fact and recommendations to the district judge." NRS

SUPREME COURT
OF
NEVADA

(O) 1947A

14

125.005(2). The dissent argues that "[b]y allowing the court or the parties to dictate the parenting coordinator's role, including the granting of binding authority, the majority is engaging in legislation and impermissibly expanding NRS 125.005(2)." Dissent opinion *post* at 5. First, we note that NRS 125.005 is inapplicable here because it "appl[ies] only in judicial districts that do not include a county whose population is 700,000 or more," and the Eighth Judicial District Court includes Clark County, which has a population of over two million. *See* NRS 125.005(6); United States Census Bureau, *Clark County, Nevada* (2015), *available at* http://www.census.gov/quickfacts/table/PST045215/32003.

But even if NRS 125.005 were applicable, the dissent's quarrel with allowing the district court to dictate the parenting coordinator's role is contradictory to its argument analogizing the parenting coordinator's role here to a referee under NRS 125.005. Dissent opinion *post* at 5 n.3 ("Nevada's use of the term 'referee' instead of 'parenting coordinator' is immaterial . . . ."). The dissent rejects the very same grant of authority for a parenting coordinator that it deems appropriate to delegate to a referee. *Id.* at 5 ("By allowing the court . . . to dictate the parenting coordinator's role, . . . the majority is engaging in legislation . . . ."). In particular, the contradiction arises when the dissent claims that a referee and parenting coordinator are the same for purposes of the analysis, and then in the analysis, indicates that a district court may dictate a referee's role, *see* NRS 125.005(2), but not a parenting coordinator's.

As implied, the district court's order appointing a parenting coordinator provides for some of the same authority as delegated to a referee pursuant to NRS 125.005. Under both the order and NRS 125.005, the court generally accepts the professional's recommendation, unless the

parties object, at which time the court fully reviews the matter. NRS 125.005(4). This process of review is hardly the "binding authority" the dissent proclaims. Dissent opinion *post,* at 5-7. And even if the review process were labeled "binding," it was legislatively implemented, an approach the dissent deems necessary to resolve the parenting coordinator issue. *Id.* at 5 ("[I]t is the Legislature's duty to frame the parenting coordinator's function.").

Lastly, although a referee under NRS 125.005 and the parenting coordinator here are given similar authority in some respects, the overall authority granted to the parenting coordinator is considerably more limited than the parameters set forth for a referee under NRS 125.005. Pursuant to NRS 125.005(3), a referee may (1) conduct proceedings "in the same manner as the district court," (2) "rule upon the admissibility of evidence," and (3) examine parties and witnesses under oath. The parenting coordinator does not have that same authority. Therefore, we reject the dissent's assertion that in reaching our holding we have taken legislative action and expanded NRS 125.005. Instead, the parties' mutually agreed-upon provision allowing a parenting coordinator to assist in resolving nonsubstantive conflicts, subject to court review upon the objection of either party, is permissible and will be upheld.[6]

---

[6]We note that, although Kirk voluntarily agreed to the appointment of a parenting coordinator, he does not actually dispute any decision of the parenting coordinator. Kirk's only opposition is an after-the-fact recantation of a parenting coordinator whose expertise he has not utilized.

Based on the foregoing, we affirm the district court's decision denying modification of its stipulated custody order and the order appointing a parenting coordinator.

_____, J.
Douglas

We concur:

_____, C.J.
Parraguirre

_____, J.
Saitta

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A

HARDESTY, J., with whom CHERRY and GIBBONS, JJ., agree, dissenting:

I dissent because the "teenage discretion" provision encroaches on the district court's jurisdiction, and the parenting coordinator provision is an inappropriate delegation of the district court's responsibility, and, as such, both provisions should be invalidated.

*"Teenage discretion" provision*

In this case, the parties stipulated to giving their minor children, once they reach 14 years of age, "'teenage discretion' with respect to the time the child desires to spend with each parent." The majority determined that this provision does not change the custody agreement because it provides only limited deviation from the parties' set schedule. However, the majority should not be concerned about the amount of discretion given to the minor children; it should be concerned that the minor children are given any discretion. The district court "ha[s] original jurisdiction in all cases excluded by law from the original jurisdiction of justices' courts." Nev. Const. art. 6, § 6(1); *see also Landreth v. Malik*, 127 Nev. 175, 177, 251 P.3d 163, 164 (2011) ("Article 6, Section 6(1) of the Nevada Constitution grants original and appellate jurisdiction to the district courts in the judicial districts of the state."). And the district court "mak[es] a determination regarding the physical custody of a child." NRS 125C.0025(1). Therefore, the district court must determine a minor child's custody arrangement, so the teenage discretion provision improperly intrudes on what should be the district court's sole determination.

Additionally, although the district court is required to consider a mature child's wishes when determining the child's best interest, there

are also many other considerations that must be taken into account. *See* NRS 125C.0035(4). The teenage discretion provision improperly endorses one consideration over the others.[1] Thus, I believe the teenage discretion provision should be invalidated.[2]

*Parenting coordinator provision*

NRCP 53(a)(1) provides that a district court may appoint a special master in a pending action. The master is required to prepare a report, and, in nonjury actions, the district court "may adopt the report or

---

[1]This determination aligns with other jurisdictions that have considered whether discretion should be given to a minor child. *See, e.g., In re Julie M.*, 81 Cal. Rptr. 2d 354, 358 (Ct. App. 1999) ("The juvenile court did abuse its discretion in giving the children absolute discretion to decide whether [their mother] could visit with them. The order essentially delegated judicial power to the children—an abdication of governmental responsibility . . . ."); *McFadden v. McFadden*, 509 S.W.2d 795, 800 (Mo. Ct. App. 1974) ("We believe it is unwise to accord children the authority and power to determine when they are to be placed in the temporary custody of the other parent who does not have their permanent custody."); *Miosky v. Miosky*, 823 N.Y.S.2d 269, 272 (App. Div. 2006) ("[V]isitation between the mother and [the] daughter—who is now 15 years of age— should not . . . have been left to the child's wishes."); *Morgan v. Morgan*, 202 S.E.2d 356, 358 (N.C. Ct. App. 1974) ("While we realize that the preferences of a 14 year old are entitled to some weight in determining custody and visitation rights, it is error to allow the minor to dictate, at will from time to time, whether the judgment of the court is to be honored.").

[2]The majority explains that this court does not rewrite contracts. Majority opinion *ante* at 9. However, because parties are not allowed to contract unlawfully, *see NAD, Inc. v. Eighth Judicial Dist. Court*, 115 Nev. 71, 77, 976 P.2d 994, 997 (1999), I would invalidate—not rewrite—the unlawful teenage discretion provision.

may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." NRCP 53(e)(1), (2). Likewise, NRS 125.005(1) permits the district court to appoint a referee in a custody action. NRS 125.005(2) provides that "the referee shall hear all disputed factual issues and make written findings of fact and *recommendations* to the district judge." (Emphasis added.) Notwithstanding NRCP 53 and NRS 125.005(1), "[t]he constitutional power of decision vested in a trial court in child custody cases can be exercised only by the duly constituted judge, and that power may not be delegated to a master or other subordinate official of the court." *Cosner v. Cosner*, 78 Nev. 242, 245, 371 P.2d 278, 279 (1962).

This court recently addressed a master's role in *In re A.B.*, 128 Nev. 764, 291 P.3d 122 (2012). In *In re A.B.*, the juvenile court reviewed a dependency master's findings in an abuse and neglect matter. *Id.* at 765, 291 P.3d at 124. This court explained that "a master's findings and recommendations are only advisory" and that "[t]he juvenile court ultimately must exercise its own independent judgment when deciding how to resolve a case." *Id.* at 766, 291 P.3d at 124. Although this court has not addressed the issue of improper delegation in the context of parenting coordinators, many states require "the court to review and approve a [parenting coordinator]'s recommendations." Christine A. Coates et al., *Parenting Coordination for High-Conflict Families*, 42 Fam. Ct. Rev. 246, 249-50 (2004) ("[T]he opportunity for judicial review [is] a touchstone in what may constitute a lawful delegation of authority versus what is an unlawful delegation of authority."). *See, e.g., In re Marriage of Rozzi*, 190 P.3d 815, 823 (Colo. App. 2008) (remanding the case to the trial

court to "clarify that the parenting coordinator may make recommendations to the parties to assist them in resolving disputes, but may not make decisions for them"); *In re Paternity of C.H.*, 936 N.E.2d 1270, 1274 (Ind. Ct. App. 2010) ("[A] parent coordinator serves a role akin to that of an expert witness who reviews information relevant to the case and develops an opinion to be accepted or rejected by the trial court."); *Silbowitz v. Silbowitz*, 930 N.Y.S.2d 270, 271 (App. Div. 2011) (explaining that the parenting coordinator's "resolutions [must] remain subject to court oversight"). Additionally, it is also an improper delegation of authority if the parenting coordinator is granted binding authority. *See Bower v. Bournay-Bower*, 15 N.E.3d 745, 748 (Mass. 2014) (vacating an order giving "the parent coordinator the authority to make binding decisions on matters of custody and visitation" because it "exceeded the bounds of the judge's inherent authority and was so broad in scope that it constitutes an unlawful delegation of judicial authority"); *Kilpatrick v. Kilpatrick*, 198 P.3d 406, 410 (Okla. Civ. App. 2008) (holding that an order mandating that "the parenting coordinator's recommendations should be observed as orders of the Court" "constitutes an improper delegation of judicial power" (internal quotation marks omitted)).

The majority reasons that contrary to parenting coordinators in other jurisdictions whose role is defined by statute, parenting coordinators in Nevada are defined by the court and/or the parties. Majority opinion *ante* at 10-11. Interestingly, two of the statutes relied upon by the majority are substantially similar to NRS 125.005(2) with regard to the parenting coordinator's role in the decision-making process, so the majority's statement that "parenting coordinators are not

authorized by statute" in Nevada is confounding.[3] *Id.* *Compare* NRS 125.005(2) ("[T]he referee shall hear all disputed factual issues and make written findings of fact and recommendations to the district judge."), *with* La. Stat. Ann. § 9:358.4(C) (2008) ("When the parties are unable to reach an agreement, the parenting coordinator may make a recommendation in a report to the court for resolution of the dispute."), *and* Or. Rev. Stat. Ann. § 107.425(3)(a)(C) (2015) (listing the parenting coordinators' services as including "[p]roviding the parents, their attorneys, if any, and the court with recommendations for new or modified parenting time provisions").

More importantly, the Nevada Constitution provides that it is the Legislature's duty to frame the parenting coordinator's function. Nev. Const. art. 6, § 6(2)(a) ("The [L]egislature may provide by law for . . . [r]eferees in district courts."). By allowing the court or the parties to dictate the parenting coordinator's role, including the granting of binding authority, the majority is engaging in legislation and impermissibly expanding NRS 125.005(2).[4] Ironically, this expansion

---

[3]Nevada's use of the term "referee" instead of "parenting coordinator" is immaterial to our analysis here. *See* Eve Orlow, *Working with Parenting Coordinators*, 30-SUM Fam. Advoc. 24 (2007) (explaining that "a 'parenting coordinator'" is "a nonjudicial officer, sometimes called special master, mediator, custody commissioner, or referee").

[4]As the majority notes, the use of referees under NRS 125.005 is limited to judicial districts that do not include Clark County. *See* majority opinion *ante* at 15. The majority's comment on this exclusion misses the point. Nevada's Legislature has only authorized the use of referees in judicial districts outside of Clark County and has not approved of the use of parenting coordinators anywhere in Nevada. Without addressing *Cosner v. Cosner*, 78 Nev. 242, 371 P.2d 278 (1962), the majority fails to explain the basis for the power of the district court judge, whether agreed
*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A

likens NRS 125.005(2) to Florida's and North Dakota's parenting coordinator statutes. *See* Fla. Stat. Ann. § 61.125(1) (West 2016) (granting the parenting coordinator the authority to "mak[e] limited decisions"); N.D. Cent. Code § 14-09.2-04 (2009) ("An agreement of the parties or a decision of the parenting coordinator is binding on the parties until further order of the court."). However, as pointed out by the majority, these statutes were authorized by the respective legislatures—not the judiciary.

In this case, the parties stipulated that a parenting coordinator would be hired *"to resolve disputes."* (Emphasis added.) Thereafter, the district court entered an order clarifying that the parenting coordinator could only resolve disputes "not involv[ing] a substantive change to the shared parenting plan," but allowed the parenting coordinator to consider issues involving exchanges, holidays, school breaks, health care, education, religious observances, extracurricular activities, travel, and communication. As far as procedure, the district court clarified that if the "mediation result[s] in an agreement, the [p]arenting [c]oordinator shall prepare a simple '[a]greement' on the subject for signature by each party and the [p]arenting [c]oordinator." However, if "the mediation [does] not result in an [a]greement, the [p]arenting [c]oordinator shall prepare and send to the parties a written decision in the form of a '[r]ecommendation,' . . . resolving the dispute." If neither party files an objection to the recommendation, "the

---

. . . *continued*

to by the parties or not, to delegate child custody decisions to a subordinate official, such as a parenting coordinator.

[r]ecommendation shall be deemed approved by the [c]ourt and shall become an [o]rder of the [c]ourt." If a party files an objection, the matter "can be reviewed by the [c]ourt."

The district court's order gives the parenting coordinator binding authority, without judicial review, when the parties are in agreement or, in the case of a disagreement, when the disagreeing party fails to file an objection. Furthermore, use of the word "can" provides only for discretionary review by the district court when an objection is filed. Thus, I conclude that the district court is not "exercis[ing] its own independent judgment," *In re A.B.*, 128 Nev. at 766, 291 P.3d at 124, and is improperly delegating its authority to the parenting coordinator, *Cosner*, 78 Nev. at 245, 371 P.2d at 279, by failing to provide for the proper review of the parenting coordinator's decisions.[5]

*Conclusion*

Accordingly, because the teenage discretion provision encroaches on a district court's jurisdiction, and the parenting coordinator's authority was not limited to making recommendations, I believe that the district court erred in failing to modify the terms of the parenting plan regarding teenage discretion and the order appointing the

---

[5]I note that it may be inefficient for the district court to review minor or emergency decisions by the parenting coordinator, such as which parent is picking up the minor child on a single occasion. However, because the order allows the parenting coordinator to address more complex issues, such as religion and education, the parenting coordinator's decisions impede on the district court's jurisdiction over child custody proceedings. *See Custody, Black's Law Dictionary* (10th ed. 2014) (defining "custody" in family law matters as "[t]he care, control, and maintenance of a child").

parenting coordinator. Therefore, I would reverse the judgment of the district court.

_____, J.
Hardesty

We concur:

_____, J.
Cherry

_____, J.
Gibbons

SUPREME COURT
OF
NEVADA

(O) 1947A